CLYDE HANSON, Appellee, v. JACOB M. DICKINSON, Receiver, Appellant.

MASTER AND SERVANT: Workmen's Compensation Act—Revival of Dormant Disease. The Workmen's Compensation Act embraces recovery for all the natural consequences of an injury "arising out of and in the course of" an employment, even though the major part of such consequences results from a slight initial injury, fanning into life a pre-existing, dormant disease, i. e., gonorrhoea.

MASTER AND SERVANT: Pre-Existing Disease Aggravating Negligent Injury. Principle recognized that one may not plead, in avoidance of his negligence, the diseased condition of his victim.

MASTER AND SERVANT: Workmen's Compensation Act—Occupa-
3  tional Disease and Injury Aggravated by Disease. The provision
   of the Workmen's Compensation Act that personal injury "shall
   not include a disease, except as it shall result from the injury,"
   is intended to exclude *occupational* diseases from the category
   of personal injuries.

*Appeal from Worth District Court.*—M. F. EDWARDS, Judge.

MARCH 16, 1920.

THE claimant was awarded by the industrial commis-
sioner an allowance for total disability during 44 weeks,
and this was approved, on appeal by the railway company
to the district court, and it has appealed to this court.—
*Affirmed.*

*F. W. Sargent* and *J. G. Gamble,* for appellant.

*Robinson & Boomhower,* for appellee.

LADD, J.—Clyde Hanson, while employed by the Chi-
cago, Rock Island & Pacific Railway Company, in its shops
at Manly, as boiler maker, was injured, July 25, 1916, when
putting a patch on the crown sheet of an
engine. Having ground a chisel on the
end, so that it would fit "into the round
part of the cotter key," he put it in the
key, and "was forcing it, when his ham-
mer slipped off the chisel, and struck his
left leg on the inside, just below the knee cap." This
caused a red spot, and black and blue coloration about
it; but he thought it would get all right. Instead, it grew
worse, until, in the early part of August, he consulted Dr.
Powell, who found a small bruise, redness covering two or
three inches in diameter, and the knee swollen. About
the 24th of the same month, he was examined by Dr. Westly,
who testified that the knee joint was inflamed and swollen;
that he opened same, and made a microscopic examination
of the substance which came from the joint, and that it con
tained gonococci. He concluded that he had gonorrhoea

1. MASTER AND
   SERVANT:
   Workmen's
   Compensation
   Act: revival
   of dormant
   disease.

arthritis. The doctor was unable to say whether the condition had been accelerated by the injury, and was of opinion that the condition might have come on without a trauma, but he could not say. Dr. Graham examined Hanson at the same time, and found conditions as recited above. They agreed that the X-ray did not show a fracture of the bone, but Dr. Graham swore that it revealed a disease of the bone, and pus. The latter advised the removal of the dead piece of bone, which was done, and left a depression. He massaged the prostate gland, which also contained gonococci, and was of the opinion that the surrounding of the bone by pus was the result of gonorrhoeal infection, and that "hidden gonorrhoea can be lighted up by a bruise," and in other ways. Dr. Powell expressed the opinion that gonorrhoeal trouble, such as has been mentioned, could "be caused by trauma or other things; anything that would devitalize tissue would cause such a condition." Hanson filed his claim for compensation during 44 weeks, May 5, 1917, and, as liability was denied, it was submitted to arbitrators, who found against the company. On review, the industrial commissioner confirmed the finding of the arbitrators, as did the district court, on appeal. The contention of appellant is that the record does not warrant the finding that the injury was the proximate cause of his disability, as found by the arbitrators. Apparently, the injury was slight. It did not break the skin, but did bruise it, and probably the tissues, such as were there; and it must be conceded that, but for the disease, the injury probably would not have proven serious, nor have resulted in prolonged disability. Nevertheless, he suffered personal injury, though slight, "arising out of and in the course of his employment" by the railroad company. The Workmen's Compensation Act, Section 2477-m et seq. of the Code Supplement, 1913, covers any and all personal injuries. The disease with which he was afflicted might have been found

to have been dormant, since dried up by treatment, about six years previous, and to have awakened into activity, shortly after the injury. That its activity during the two months following the injury was such as to infest the knee joint and prostate gland with gonococci bacilli does not obviate this conclusion. Dr. Powell expressed the opinion that anything that would devitalize tissue would cause gon-orrhoeal trouble, such as experienced by the plaintiff, and Dr. Graham was of the opinion that "hidden gonorrhoeal trouble can be lighted up by a bruise." Though both physicians indicated that there might be other causes, the record is void of any evidence suggesting any other than the injury; and, as we think, there was some evidence sustaining the industrial commissioner's conclusion that the disease was lighted up or accelerated by the hammer's accidentally slipping from the chisel and striking complainant. See *Brownfield v. Chicago, R. I. & P. R. Co.*, 107 Iowa 254. This being true, the courts may not interfere with such finding. *Griffith v. Cole Bros.*, 183 Iowa 415. Counsel for appellant contends, however, that, inasmuch as complainant's condition "did not result from the injury," but is so through dis-ease, there was no liability. The decis-

2. MASTER AND SERVANT: pre-existing disease aggravating negligent injury.

ions are quite generally to the contrary, as counsel admits. The trend of opinion is in accord with what was said in *Crow-ley's Case*, 223 Mass. 288 (111 N. E. 786):

"The material evidence before the arbitration committee, submitted without the introduction of further testimony to the industrial accident board upon review, warranted the findings that the employee had a pre-existing constitutional disease, known as syphilis, which, being dormant, left his ability to perform the arduous work for which he was hired unimpaired, and that, because of the nature of the accident arising out of and in the course of employment, his nervous system suffered a shock sufficiently severe to

aggravate and accelerate this condition, until general paralysis or insanity resulted, depriving him of all capacity for work in the future. The statute prescribes no standard of fitness to which the employee must conform, and compensation is not based on any implied warranty of perfect health or of immunity from latent and unknown tendencies to disease, which may develop into positive ailments, if incited to activity through any cause 'originating in the performance of the work for which he is hired. What the legislature might have said is one thing; what it has said is quite another thing; and, in the application of the statute, the cause, or partial or total incapacity may spring from and be attributable to the injury, just as much where undeveloped and dangerous physical conditions are set in motion, producing such result, as where it follows directly from dislocations or dismemberments, or from internal organic changes, capable of being exactly located."

See, also, *State v. District Court of St. Louis County*, 137 Minn. 435 (163 N. W. 755); *City of Milwaukee v. Industrial Com.*, 160 Wis. 238 (151 N. W. 247); *Hartz v. Hartford F. Co.*, 90 Conn. 539 (97 Atl. 1020); *Winter v. Atkinson, etc., Co.*, 88 N. J. L. 401 (96 Atl. 360); *Ramlow v. Moon Lake Ice Co.*, 192 Mich. 505 (L. R. A. 1916 F, 955). Like decisions by commissioners of the several states will be found collected in Bradbury's Workmen's Compensation (3d Ed.) 566.

The law is well settled that one predisposed to disease which is aggravated or accelerated by a negligent injury, is entitled to recover damages necessarily resulting from such aggravation or acceleration. In other words, the previous condition of the person injured cannot be invoked by the defendant for the purpose of escaping the consequences of his own negligence. The duty of exercising care to avoid injury to the weak and infirm is precisely the same as toward the strong and healthy; and, when that duty is vio-

lated, the measure of damages is the injury inflicted, even though the injury might have been aggravated, or might not have happened at all, but for the peculiar condition of the person injured. *McCahill v. New York Trans. Co.*, 201 N. Y. 221 (48 L. R. A. [N. S.] 131, and extensive note in which the cases are collected, at page 119). The Workmen's Compensation Act dispenses with the necessity of any showing of negligence, contributory negligence, and the like, and adopts as the standard or condition that the injury must have been personal, and have arisen "out of and in the course of the employee's employment." The act does not purport to deal with the consequences, save as these may fix the compensation to be paid by the employer, and there is no tenable reason for modifying the rule as to liability which obtained at the common law. It is urged, however, that, under the definition "personal injuries," in Paragraph g in Section 2477-m16 of the Code Supplement, 1913,

3. MASTER AND SERVANT: Workmen's Compensation Act: occupational disease and injury aggravated by disease.

a pre-existing disease ought not to be considered, even though "lighted up" or accelerated by the injury. The paragraph reads:

"They [personal injuries] shall not include a disease except as it shall result from the injury."

In the English Act, as well as those of most of the states, the remedy provided is for "personal injury by accident," and this is held to exclude diseases other than those in consequence of the injury. Manifestly, the term "personal injuries" is of much broader significance than "personal injury by accident." It comprehends a great number of injuries, many of which will be found enumerated in *Hurle's Case*, 217 Mass. 223 (Ann. Cas. 1915C 919), and in *Madden's Case*, 222 Mass. 489 (111 N. E. 379). The manifest design of the general assembly, in providing that the term "personal injuries" should not include a disease, was to eliminate

occupational diseases: that is, those which are incidental to or result from the occupation in which the employee is engaged. In a sense, these may be said to "arise out of and in the course of the employment," but usually are covered by increased compensation of the employee. Nor can it be said that the injury claimed for includes the disease with which he was afflicted. What is claimed for is injury as inflicted by the accidental slipping of the hammer and the natural consequences flowing therefrom and traceable thereto; and, as said, this might have been found by the industrial commissioner to be the "lighting up" or accelerating of the dormant disease. The claim is not based on the disease, but on what the bruise did to the disease. *In re Bowers,* (Ind.) 116 N. E. 842; *Madden's Case,* supra. Cases like *Voelz v. Industrial Com.,* 161 Wis. 240 (152 N. W. 830), *McCoy v. Michigan Screw Co.,* 180 Mich. 454 (147 N. W. 572), and a commissioner's decision, *Spangler v. Philbin,* 2 Cal. Indus. A. C. 170, in each of which the holding was that there was no causal connection between the disease and injury shown, are not in point. Here, the industrial commissioner found that claimant's injury, though not severe, was the proximate cause of this condition, and we are of the opinion that the record was such that we may not interfere with his conclusion.—*Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.