O. C. JACKSON, Appellee, v. IOWA TELEPHONE COMPANY,
Appellant.

MASTER AND SERVANT: Workmen's Compensation Act—Finality
of Fact Issue. A finding of fact by the industrial commissioner on
conflicting evidence, whether such finding be in favor of or against
the employee, is *final.* So held where the finding was as to the
duration of an injury.

*Appeal from Polk District Court.*—JOSEPH MEYER, Judge.

NOVEMBER 26, 1920.

REHEARING DENIED MARCH 11, 1921.

APPELLEE began proceedings before the Iowa industrial
commissioner, alleging that he was injured while in the employ
of appellant, and asking compensation for a period of 40 weeks,
at $10 per week, under the compensation law. The arbitration
committee decided that appellee had received an injury result-
ing in 13½ weeks' disability, and that, this having been paid by
the defendant, there was nothing due plaintiff. This finding
was confirmed on review before the industrial commissioner.
Appellee appealed to the district court, which reviewed the tes-
timony certified to it, which had been taken before the com-
mittee, and which included additional testimony received by
the commissioner. On the appeal, the district court set aside
the prior findings, because the facts found do not support the
findings, and because there was not sufficient competent evidence
in the record to warrant the commissioner in making the order
complained of, and found that the appellee had been inca-
pacitated for a period of 28½ weeks, from which it deducted the
13½ weeks for which appellee had been paid, and entered judg-
ment for 15 weeks' disability, $157.50. The $140 was paid by
the defendant under a plan of compensation of its own, which
it claims is more liberal to its employees than the compensation
allowed by statute. This question was presented to the com-

missioner, who held against the appellant on that proposition, and the company did not appeal therefrom. From the judgment of the district court, the defendant has appealed to this court.—*Reversed.*

*C. Woodbridge,* for appellant.

*Nesbitt & Johnson,* for appellee.

PRESTON, J.—The disputed question before the commissioner was as to how long plaintiff was disabled by reason of his injury. The injury seems not to have been serious in the first place, but appellee contends that the injury caused rheumatism, or that, because of a latent tendency to rheumatism, it was accelerated by the injury, and was the proximate cause of the disability, and that the disability was prolonged by reason thereof. Appellant's contention is that the injury was slight, and that recovery therefrom was complete within a short time, and that any disability thereafter was solely from rheumatism. Appellant further contends that the disability from the injury was even less than 13½ weeks, but that, since it had paid plaintiff an amount equal to the compensation for 13½ weeks, the commissioner simply allowed for that period. It seems to be conceded, or at least not disputed by appellee, that he has the burden of proof. Appellant says that the evidence clearly preponderates in favor of the appellant, but that, in any event, if there is a conflict in the testimony, the findings of the committee and commissioner are conclusive, and that the courts may not reverse, even though they should be of opinion that the preponderance of the evidence was the other way. They cite *Griffith v. Cole Bros.,* 183 Iowa 415; *Hanson v. Dickinson,* 188 Iowa 728; *Ninneman v. Industrial Com.,* (Wis.) 176 N. W. 909. We think there is a conflict in the testimony, and that the facts found by the commissioner support his order, and that there is sufficient competent evidence to warrant his finding. This being so, it will be necessary to refer to the testimony; but we shall attempt to do so as briefly as may be. It should be said, perhaps, at the start that some of the evidence for both appellee and appellant was in the form of affidavits, the evidence for ap-

pellant being particularly in that form. Appellee argues somewhat strenuously that affidavits are not admissible. We held otherwise in *Reid v. Automatic Elec. Washer Co.*, 189 Iowa 964. That case was not reported, at the time of the decision by the district court in this case. The district court may not have considered the affidavit of the defendant. It was received and considered by the commissioner.

Plaintiff says he was injured on August 28, 1917; that, in coming down a telephone pole, he slipped on a step and fell about 7½ feet; that his foot struck on some brickbats; that the accident happened at 4:30 in the afternoon, and that, when he went home that night, the foot was swollen; that he thought he had sprained it; that he thought there was no injury to the bottom of the foot; that it was swollen, and the ankle also; that he put on liniment; that he did no work that day; that he was not able to get around before December 15th; that he was totally incapacitated until March 15, 1918; that, at the time of the hearing, he was employed at the Wells Transfer, at the Union Depot; that he was then able to perform most kinds of labor; that he had not had rheumatism since the year 1904 or 1905, until after this injury.

Dr. Willett testifies:

"I attended Mr. Jackson during the year of 1917. When I was first called, he was suffering a great deal of pain. He had a swollen ankle, which was red and inflamed. I do not remember observing the ball of his foot. I treated him for his foot several days. I don't think it was quite as long as until October; it was the latter part of September or the first of October that he developed rheumatism. I treated him for rheumatism until the middle of December. This rheumatism was located in the knee, shoulder, and two or three different joints. The foot was affected with it, too. He was still having some rheumatism when I quit calling on him, but he was practically cured of rheumatism at that time. I saw him in my office in February or March. He did not have any rheumatism at that time. There was some tenderness then in the bottom of the foot. There was no swelling. I found no fracture in the foot or ankle. I ceased to treat Jackson for anything about the middle of December. I told him he was still suffering slightly—he was suffering at that

time from rheumatism, and still had some trouble with the ankle and bottom of the foot. I cannot establish whether it was due to the injury or due to the rheumatism.''

The evidence of Dr. Willett varies somewhat from a report made by him of an examination he made on September 29, 1917, wherein the diagnosis was given as rheumatism; condition improved; prognosis good; and that plaintiff would probably be able to return to work in about ten days; treated patient mostly for acute rheumatism. Additional testimony was taken before the commissioner on October 28th, Dr. Hutchinson testifying that, if rheumatism is latent in the system, an injury would have a tendency to bring on rheumatic conditions; that he recalls one case in his own experience where a man fell 16 feet, and the bones of his foot were crushed almost to a pulp, where a rheumatic condition resulted; that, if the injury involved only the soft tissues, and not the bone, he would say that it would not be sufficient to cause rheumatism; that he would expect to find rheumatism in the neighborhood of the injury; that, if the injury was nonconsequential, he would assume that the rheumatism was chronic; that he never saw plaintiff until the day he testified; and that he would not pretend to know or be able to tell what the extent of the injury was, or whether his rheumatism came on from the injury or simply that he has the rheumatism. Another witness testifies that he saw plaintiff on Christmas Day, 1917, and helped carry plaintiff in an automobile, and says that it was apparent that he could not use this one limb at that time. Plaintiff offered the affidavit of Dr. Carson, who treated plaintiff for rheumatism in the winter of 1904, stating that he has not known of his having rheumatic trouble since that date, until 1917. In his opinion, if rheumatism was latent in plaintiff's system, the weakening of his physical condition which resulted from the injury would have a tendency to develop the latent disease, and make him subject to a rheumatic attack. It will be noticed that the witness does not give his opinion that the injury did develop the latent disease, but only that it would have such tendency. The defendant offered in evidence, over plaintiff's objection, a report by Dr. Luginbull, which was received in evidence, of an examination made November 16, 1917, in which the diagnosis was given as chronic arthritis; prognosis

poor; and that there was no fracture anywhere, nor any evidence of an old fracture. We understand that this report was made after the doctor had been appointed by the commissioner, under Section 2477-m30, Code Supplement, 1913; but this is not entirely clear.

A witness testifies for defendant that, while plaintiff was working under him, during the year previous to the injury in question, plaintiff was disabled or laid up three or four times, and that plaintiff always told him that the reason was rheumatism. He appeared to be lame, and could not climb poles,—at least, he said he could not. Plaintiff "laid off," and did not work for a time, and told witness that he was troubled with rheumatism. This evidence is denied by the plaintiff in rebuttal. Defendant offered in evidence the affidavit of Dr. Fay, who says:

"I first examined O. C. Jackson on October 3, 1917. At that time, Jackson stated that he had his right foot injured on August 28, 1917, in falling from a telephone pole which he was climbing; that he fell a distance of 6 or 7 feet to the ground, striking his foot on a brick. At the time of said examination, he was complaining of pain in the region of the first, second, and third metatarsal bones of the right foot, and claimed to be unable to walk on account of the pain. Examination failed to disclose any evidence of injury, and it was my opinion that Jackson's injury had been slight, recovery being complete within a short period; and that, at the time of said examination, his disability was entirely due to an acute rheumatism. An X-ray was taken to determine definitely as to the presence of a fracture. This X-ray was made on November 15, 1917, and there was then no fracture, nor evidence of an old fracture. On February 19, 1918, I again examined Mr. Jackson. At that time, there was no swelling and no deformity of the foot, and he walked without a limp. There was absolutely no evidence that the pain of which he then complained was in any manner or degree the result of his injury of the previous August. There was not, at any time after I saw Mr. Jackson, on October 3, 1917, any physical evidence to connect it and the disability of which he complained with the accident of August 28, 1917. It is my opinion that the rheumatism from which Mr. Jackson has

suffered was in no manner or degree caused or contributed to by the alleged injury of August 28, 1917. Rheumatism is now universally recognized as a disease of bacterial origin, the exciting organisms invading the joints from a focus in some other part of the body, e. g., the tonsils, abscessed teeth, infection in the genito-urinary tract, etc. Rheumatism is never the direct result of an injury, nor does injury determine an inflammatory condition, where rheumatism is latent in the system. This is evidenced by the fact that manipulation plays an important part in the treatment of old rheumatic joints. In an acute rheumatic process, the condition of a given joint might be unfavorably influenced by a traumatism.''

We have given in a general way the substance of the testimony. The evidence as to whether plaintiff's disability, up to the time he claims for, was due to the injury, or whether it was wholly from rheumatism, depends upon the evidence of the medical witnesses and their opinions. As to this, there is a conflict, and there is some conflict in plaintiff's own evidence as to the length of the disability. Dr. Willett says there was rheumatism in February, and he says further that he could not tell whether the trouble was due to the injury or to rheumatism. Dr. Carson says the same. Dr. Fay's evidence is positive that it was due wholly to rheumatism. If we considered the evidence of plaintiff alone, it would justify the commissioner in finding that plaintiff was entitled to compensation for the longer time claimed by him. On the other hand, if the evidence of the defendant be considered alone, it would justify a finding by the commissioner that there was no disability from the injury for a longer period than 13½ weeks, as the committee and the comsioner both did find. In making the award, two members of the committee found in favor of defendant, and one was in favor of the plaintiff. The commissioner agreed with the two members of the committee. The district court disagreed with the commissioner. We disagree with the district court. Clearly, there is a conflict. We do not pretend to say which side is right. That is not our province. We said, in the *Hanson* case, supra, that there was ''some evidence sustaining the industrial commissioner's conclusion that the disease was lighted up or accelerated by the accidental slipping of the hammer from the chisel, and striking

complainant. This being true, the courts may not interfere with such finding'' (citing the *Griffith* case). Such is the situation here, except that the commissioner arrived at the opposite conclusion. The rule ought to be and is the same in either event. Any other rule would encourage litigants to bring the matter first before the arbitration committee, then to the industrial commissioner, then to the district court, then to the Supreme Court, for the determination of the credibility of the witnesses and the preponderance .of the evidence, hoping that somewhere along the line a tribunal could be found that would differ, as the district court did, with the findings of the committee and commissioner, the tribunals established by law for the determination of such questions; so that, instead of simplifying the procedure and lessening litigation and expense, it would become more complicated and more expensive. The statute, Section 2477-m24, Code Supplement, 1913, provides that the process and procedure under the act shall be as summary as reasonbly may be.

We reach the conclusion that the trial court erred in setting aside the finding of the industrial commissioner. The judgment is—*Reversed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.