J. HUGHES, Appellee, v. CUDAHY PACKING COMPANY, Appellant.

**MASTER AND SERVANT:** Workmen's Compensation Act—Findings Conclusive on Court. Evidence reviewed, on the issue whether a hernia was congenital or arose out of and in the course of an employment, and held to present such conflict as to render the finding of the industrial commissioner conclusive.

WEAVER and PRESTON, JJ., dissent.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

DECEMBER 15, 1921.

PLAINTIFF claims compensation from defendant because of a hernia from strain, resulting, as he claims, from an injury sustained while performing his work as an employee of defendant. Plaintiff's claim was disallowed by the arbitration committee, and on review, by the industrial commissioner. The district court, on the evidence taken before the committee and the commissioner, reversed the finding of the commissioner, and allowed compensation for the amount, and for the period of disability for which it was stipulated he was entitled to recover, if it should be found that he was entitled to recover at all. Defendant appeals.—*Reversed.*

*Sears, Snyder & Gleysteen, Vail E. Purdy,* and *H. C. Harper,* for appellant.

*F. L. Ferris,* for appellee.

PRESTON, J.—The substance of plaintiff's claim is that, for several months, up to the 13th of June, 1919, and for four or five weeks thereafter, while in the employ of defendant, he was engaged in handling heavy meats, some of the pieces weighing about 95 pounds; that, some four or five weeks prior to June 13th, a pain developed in his left groin, over the canal, but thinking it only temporary, he kept on at work until about June

13th, when it developed into a hernia, the result of the constant strain incident to his employment; and that, on said June 13th, he was obliged to quit work until he was operated upon. The operation was successful, and after his recovery he was able to perform labor. He claims further that his hernia is of traumatic origin, and was originated by a severe strain received in the usual course of his employment, and by reason of having to lift and throw heavy meats on a slippery floor, and while he was in a twisted position; that it did not develop instantly, and did not, for a time, prevent his continuing his work; that he continued his work for a time in ignorance of his actual condition; that he was finally compelled to cease labor. He alleges that the hernia is the result of a strain received in the course of his employment, and is due to the unusual strain incident to his employment. Defendant admits the employment, and says that, if defendant has a hernia, as he claims, it was not of traumatic origin; that it was of long standing, and the result of a gradual weakening of the abdominal walls, and not the direct result of a strain or unusual pressure by reason of heavy lifting. Defendant therefore denies that the injury claimed for arose out of and in the course of plaintiff's employment.

We do not understand that the committee or the industrial commissioner refused compensation on the ground that there was a congenital tendency or a pre-existing cause, but rather that the evidence did not show that plaintiff's disability resulted from a fortuitous incident in the nature of an accident arising out of and in the course of the employment. The commissioner stated in his opinion that, while there is considerable medical evidence in regard to pre-existing cause or condition and congenital tendency, such matters were unimportant; that, if plaintiff, in the performance of service requiring the strength of an able-bodied man, had sustained some injury definitely located and well defined, such as to break him down and destroy his earning power, it would not matter whether or not medical science decided him to have been subject to such development because of anatomical construction. The cases seem to so hold. The commissioner further said that the matter of compensation for hernia is a source of much perplexing controversy; that, in order to establish a compensation claim based upon such cause,

evidence must be submitted showing that a workman in usual strength and efficiency, in some specific incident of his employment, sustains such injury as to break him down and to make necessary a surgical operation; that no injury, accidental or otherwise, involving any specific occurrence, such as a slip or fall or definite strain from over-lifting, is in evidence; that plaintiff is unable to name any time, either as to an hour, a day, or a week, in which anything happened to him which could be taken as a basis for the disability which is alleged. The commissioner concluded by saying that, in a case so conspicuously wanting in evidence as to injury arising out of and in course of employment, compensation liability cannot be established.

The substance of claimant's testimony is that he is 49 years of age; farmer most of his life; never had any difficulty or discomfort from anything that was apparently a rupture, up to about June, 1919.

''The first thing I observed in connection with this rupture was an awful pain struck me in there, and burning and hurting, until I would have to—if I could get a chance, I would put my foot up on something to ease myself. Kept on working as long as I could stand it—about four or five weeks, as near as I know. I am a married man, and have five children. Kept on working from necessity. Never complained to anyone very much about my trouble. Mentioned it to some of the men I was working with. Mr. Walker was one of them. I was advised to go to a doctor, and went to Dr. Cremin; also consulted Dr. Schott. He is the only one who treated me. Complained to the company the next day after I quit work, four or five weeks after I claim I got the hernia. First learned I had hernia from Dr. Cremin about June 14th or 15th. I am unable now to state the exact date I received the hernia. Gradually got worse. I continued work four or five weeks, with this condition getting a little worse every day, until the pain got so severe I went to a doctor. Some days the pain would be more severe than others. It became worse, and this was true during all the time until I had the operation. The first time I had the pain, I didn't quit work. The day I quit, I told the men I was working with that I was ruptured. I don't recollect the date I first experienced the pain. The time of day was about 2 o'clock,—I remember that

because it was directly after I ate my dinner. I suffered no blow or fall or anything like that. It is the medium weight meats we handled at that time; heavier meats just before. It was two or three weeks after that I first noticed some swelling. It kept getting a little larger."

Dr. Schott, testifying for claimant, says, in substance:

"Examined plaintiff four or five months ago. Found a left inguinal hernia. Operated on him about two months ago. The operation was successful. He was in the hospital about three weeks, and is now able to do reasonably hard work. The operation was November 14th. At the time of the operation, the sac was rather delicate; no adhesions within the sac, and the contents consisted of omentum and epiplocele. It is pretty hard to say whether this hernia is congenital or otherwise. These hernias are supposed to be of a congenital condition: that is, a result of the weakened condition of the abdominal wall, a sac being formed which goes down through the internal ring. These ruptures may come down at any time after birth. Their development may be hastened by trauma. From the history of this case, it seems to me this condition was the result of trauma. From the examination I could not tell whether it was congenital or the result of trauma. At the time of the operation, there was no evidence, aside from what he told me, that the hernia was due to trauma. I couldn't tell definitely how long the hernia had been existing. A man having no predisposition towards hernia would, in order to suffer a hernia from strain, have to have so severe a strain that from the time of the hernia he would be unable to work, and would be practically helpless. Claimant could not have worked afterwards as he said he did unless he had some previous weakening of the abdominal muscles. He could have had a protrusion of this sort from strain which would have caused considerable pain or discomfort, and gradually increasing in size to such an extent that he would quit work as a result. My idea of a traumatic hernia is one that may be brought down from a strain, either sudden or from time to time, coupled with a congenital condition. There may be a traumatic hernia in a well, vigorous person, having no previous condition of hernia, where the hernia is a result of trauma—a so-called traumatic hernia. You can also have a

traumatic hernia if the trauma is the exciting cause of a hernia in a person having a preformed congenital condition. This man probably had a preformed congenital condition present. There was a well formed sac. There was no sign of acute injury. This hernia appeared to be a rather recent origin, and in hernias of this kind, a man would be apt to keep on working until it caused him considerable discomfort.''

Walker testifies:

''Worked beside claimant. He was able to do his work regularly. There was a time when he complained first about two or three weeks before he quit work. The last day, he told me he had a kind of lump in his side, and I said it might be a rupture, and he had better see a doctor. I have been afflicted with rupture myself. Claimant never cried out at any time; have no recollection of any such incident as that.''

This is the substance of all of claimant's testimony.

For defendant, the nurse at the packing company's plant says:

''Claimant came in on June 14th, and said he had a pain in his side, caused from strain, and I sent him to Dr. Cremin. Claimant said he had this pain for some four or five weeks.''

Dr. Cremin, testifying for defendant, says:

''Examined claimant June 14th. Discovered he had a hernia. He gave me a history of the case. He said he had pain and discomfort in his side for four or five weeks. Told me of no specific injury he had received,—I inquired as to that. I found he had an inguinal hernia, and advised an operation. From the history of the case as given me by claimant, and as testified to by him, I am able to state that, in my opinion, this hernia was not traumatic in its origin. A hernia in a workman engaged in lifting meats daily of the weight described, and suddenly feeling a pain and saying nothing about it, and continuing this work for four or five weeks, during which there was a recurrence of the pain from time to time, could not, in my opinion, be a traumatic hernia. A traumatic hernia has got to have some great violence. It is a hernia that tears through the inguinal canal, tearing those tissues loose. Any time you tear the tissues loose suddenly, there is bound to be hemorrhage and extreme pain and shock. A man receiving a trauma like that would have to stop work in-

stantly,—the chances are he would fall down, and be unable to stand. It would lay him off from working for several days. There is no way a traumatic hernia can arise without violence. This man had sac, which rules out any idea of a traumatic hernia.''

On cross-examination, he says:

'' All hernias are caused by strain. A large percentage of the male sex have congenital hernia to some extent after they reach the age of 30 or 35 years. Any strain would have a tendency to accentuate or accelerate it. In a hernia of this type, the condition is made usually of the omentum—that is, the covering on top of the intestines, made up of the intestines—that is pushed down through this canal.''

He continues:

''When it is pushed down, the covering, the peritoneum, the covering of the abdominal cavity, which forms a sac in which the bowels, the omentum, in this gradual process, are being pushed down gradually,—that stretches this peritoneum and pulls down into this canal; and any sudden strain or anything that will cause these substances to go through that would suddenly weaken or force this sac, or anything that would tear the covering of the intestines, or the omentum, or anything that would cause it to be forced down through this sac, or what forms the sac,—a traumatic hernia could have no sac,—a recent hernia might have a thin sac, but that is not a traumatic hernia—that would be a congenital hernia.''

1. Appellant contends that there is such a conflict in the testimony that the finding of the industrial commissioner is conclusive upon the court. If claimant's hernia was of long standing, and existed prior to his employment by defendant, or was not the result of an injury in his work as one of the employees of defendant, or if there was evidence, though disputed, tending to sustain defendant's contention, then the finding of the commissioner is conclusive. We have held a number of times that, where there is a conflict in the testimony,—and this means, as I think, a substantial conflict, and not a mere scintilla or slight evidence by one party opposing that of the other,—the decision of the industrial commissioner is conclusive. Under such circumstances, I agree that it ought to be so, whether com-

pensation in a given case is allowed or disallowed.   Otherwise, the courts will be flooded with cases which the compensation law contemplates shall be decided in a summary manner; litigation will be increased, rather than diminished; and claimants for compensation may be subjected to more, rather than less, vexation, in an effort to secure a smaller recovery than they might recover in a common-law action.   Thus employees, for whose benefit largely the compensation law was enacted, might be, in many instances, deprived of the benefits of the act.   Among the numerous cases holding that the decision of the commissioner is conclusive, see *Jackson v. Iowa Tel. Co.*, 190 Iowa 1394; *Hanson v. Dickinson*, 188 Iowa 728; *Pace v. Appanoose County*, 184 Iowa 498; *Norton v. Day Coal Co.*, 192 Iowa 160; *Miller v. Gardner & Lindberg*, 190 Iowa 700; *Pierce v. Bekins V. & S. Co.*, 185 Iowa 1346; *Flint v. City of Eldon*, 191 Iowa 845.   See, also, Section 2477-m33, Code Supplement, 1913; Chapter 270, Acts of the Thirty-seventh General Assembly; and Compiled Code, Section 842.

Appellant cites *Bachman v. Waterman*, 68 Ind. App. 580 (121 N. E. 8), *Campbell v. Clausen,* 183 App. Div. 499 (171 N. Y. Supp. 522), and *Miller v. Gardner & Lindberg*, supra, as holding that, even though there are items of fact undisputed, the industrial commissioner's inferences of ultimate fact therefrom, if reasonable, are conclusive.   But this cuts both ways.   If the reasonable and proper inferences are contrary to the finding of the commissioner, then such finding ought not to be conclusive. A majority of the court are of opinion that there is such a conflict in the testimony as to make the finding of the commissioner conclusive, and that the judgment of the district court should be reversed, and it is reversed.

2.   For myself, I am not convinced that there is such a conflict.   If there is any conflict in the testimony, it is found in the testimony of the medical witnesses.   I shall refer to this later, as briefly as may be, and attempt to show that there is no substantial dispute in the testimony of Dr. Schott and Dr. Cremin.   Before doing that, however, I shall refer to the statute, which contemplates, as I think, that there must be a substantial conflict.   The finding of the commissioner is not absolutely binding in all cases, even though there may be a slight or

trifling conflict in the evidence. The rule ought to be applied in the general run of cases; but if we now lay down a hard and fast rule that the finding of the commissioner is conclusive in all cases, the time may come when some other industrial commissioner might feel justified in arbitrary action in his findings. This court and other courts have held that, upon filing of the decision of the industrial commissioner in the district court, the court is not limited to the formal, ministerial, and perfunctory act of recasting said decision into the form of a court decree. The statute before cited, as it now stands, immediately following the provision that the finding of the commissioner, in the absence of fraud, is conclusive, provides that the district court, upon the hearing before it, "may confirm or set aside such order or decree of the industrial commissioner, if he finds: * * *

"3. That the facts found by the industrial commissioner do not support the order or decree.

"4. That there is not sufficient competent evidence in the record to warrant the industrial commissioner in making the order or decree complained of.

"No order or decree of the industrial commissioner shall be set aside by the court upon other than the grounds just stated."

Plainly, this requires the district court to determine whether there is sufficient competent evidence in the record to warrant the finding of the commissioner, etc. Before discussing the evidence as to the supposed conflict between the two doctors, it may be well to first refer to another matter.

3. As before stated, the commissioner held that, in order to establish a compensation claim, it was necessary for plaintiff to show some specific incident of his employment in the nature of an accident, such as a slip or fall or some definite strain from over-lifting, causing an injury such as to break him down and to make necessary a surgical operation. This, we take it, is a question of law, whether it must be shown that it was an accident, in the sense in which the commissioner considered it. We may say, in passing, that it seems to us that the evidence is undisputed that complainant's hernia did break him down, and that an operation was necessary. The defendant's doctor, Cremin, testifies that he advised an operation, and an operation was had. And in this connection, too, we may say that the com-

missioner, in stating that claimant made no complaint, evidently overlooked the testimony of claimant and Walker, who both testify that claimant did make complaint, and that he complained about the time he claims he was injured, by the sudden pain about 2 o'clock in the afternoon of a time fixed by him.

Going back to the question now as to whether it was necessary to show that it was an accident. There is no claim that claimant's alleged injury was willfully intentional, or that it could have been foreseen, or that it was expected by him. Appellant argues at some length that, to be compensable, the injury must be the result of a slip, fall, or the like, in the nature of an accident. They cite cases decided under statutes of other states, where the statute itself provides compensation for accidental injuries. Appellant cites several provisions of the Iowa Compensation Law, and claims that our law provides compensation for accidental injury. But the only section of the statute pointed out wherein the word "accident" is used, is Section 2477-m14, where, relating to procedure, it speaks of the place where the accident occurred. Appellant concedes that the title of the act describes it as an act relating to employers' liability for personal injuries sustained by employees. Such is the language also in the title to the amendatory act, Chapter 270, Acts of the Thirty-seventh General Assembly. Appellant also points out that Sections 2477-m(a), 2477-m(c), and 2477-m(d), Code Supplement, 1913, speak of a personal injury sustained by the employee. Section 2477-m6 speaks of the employee's receiving an injury. Section 2477-m8 speaks of the occurrence of an injury. Section 2477-m16(e) again refers to the words "personal injury," etc., and for injuries received at places other than the employer's place of business, where the employees are subject to the dangers incident to the business. Section 2477-m16(f) and (g) excludes injuries caused by the willful acts of other persons and by disease, except it shall result from the injury; and Section 2477-m1(a) provides that no compensation shall be allowed for an injury caused by the employee's willful intention to injure himself, etc.

It will be seen from the foregoing statutes that there is but little in the statute on which to base the thought that the injury must be accidental. It has been held in other jurisdictions,

and even under statutes which use the word "accident," that, in compensation acts, the word is employed in contradistinction to the expression "willful misconduct," which is found ordinarily in the same section or paragraph of the statute. 28 Ruling Case Law 787. Thus, in Wisconsin, the language is:

"Where the injury is proximately caused by accident, and is not intentionally self-inflicted."

Under that statute, the court said, in *Vennen v. New Dells Lbr. Co.*, 161 Wis. 370 (L. R. A. 1916 A, 273, 275):

"These facts and circumstances clearly charge that Vennen's sickness was the result of an unintended and unexpected mishap, incident to his employment. These allegations fulfill the requirements of the statute, that the drinking of the polluted water by the deceased was an accidental occurrence."

We think the term "personal injury" is of much broader significance than "personal injury by accident," or "accident," and like expressions found in different statutes. In *Hanson v. Dickinson*, 188 Iowa 728, 733, we said:

"Manifestly, the term 'personal injury' is of much broader significance than 'personal injury by accident.' It comprehends a great number of injuries, many of which will be found enumerated in *Hurle's Case*, 217 Mass. 223 (Ann. Cas. 1915 C 919), and in *Madden's Case*, 222 Mass. 489 (111 N. E. 379)."

This language was used in discussing another phase of the Compensation Act, but we think it is applicable to the instant case. The Supreme Court of Connecticut has held, in *Larke v. Hancock Mut. L. Ins. Co.*, 90 Conn. 303 (97 Atl. 320, L. R. A. 1916 E, 584):

"If the term 'personal injury' be given its narrowest construction, and confined to injuries of accidental origin, it must be held to include any form of bodily harm or incapacity, whether arising by direct contact, or lesion caused by external violence or physical force, or untoward mishap."

We have held that the provisions of the Compensation Act are to be liberally construed, and not given the narrowest construction. Appellant cites cases wherein the word "accident" is defined. Some of these are accident insurance cases and the like. They cite *Kutschmar v. Briggs Mfg. Co.*, 197 Mich. 146 (163 N. W. 933); and *Tackles v. Bryant*, 200 Mich. 350 (167

N. W. 36). It is true that, under the Michigan statute, the court has adopted a rule that an injury such as hernia or a rupture of the heart does not result from accident, within the meaning of the Michigan statute, when the injury is received at a time when the employee is doing his regular work in the usual way, and there occurs no unusual, unexpected, or fortuitous happening which causes the injury and which is accidental in character. *In re Maggelet*, L. R. A. 1918 F, 864, 873. The *Kutschmar* case, supra, is referred to in the citation just given, where the court held that an employee who receives an injury in the nature of a hernia, while engaged in his usual and ordinary employment, without the intervention of any untoward or accidental happening, is not within the provisions of the Compensation Act, which provides compensation for accidental injuries only. In that case, the employee was lifting a beam weighing about 90 pounds, and he had to do this 90 or 100 times a day; but there was no fall or stumble. I think that, under our statute, the Michigan rule ought not to apply. If claimant in this case was injured at the time and in the manner testified to by him, it is clearly a personal injury, within the meaning of our statute. And I think that, if it occurred while he was in the employ of the defendant, and his hernia was the result of a constant strain, and a sudden breakdown, as he says, he was entitled to compensation, even though there was no slip or other specific incident in the nature of an accident. Appellee contends that, under the Iowa law, it is immaterial whether or not one meets with an accident giving some outward sign of injury, and that hernia, whether traumatic or inguinal, is compensable, whether the result of an accident of which there is no outward indication, or of a continued strain producing internal injuries or developing a hernia. They cite *Rish v. Iowa Portland Cement Co.*, 186 Iowa 443; *Oliphant v. Hawkinson*, 183 N. W. 805; L. R. A. 1916 A, 228, 292 to 303, text and annotations; *Adams v. Acme W. L. & C. Wks.*, 182 Mich. 157; *Zappala v. Industrial Ins. Com.*, 82 Wash. 314 (L. R. A. 1916 A, 295, 299); *Poccardi v. Public Serv. Com.*, 75 W. Va. 542 (84 S. E. 242). In the last named case, it was held that, in the absence of conflict in the evidence, it was the duty of the commission to give plaintiff the benefit of inferences arising in his favor from the

958 · HUGHES v. CUDAHY PACKING CO. [192 Iowa

facts proved, in the absence of direct evidence. On the question as to the effect of a predisposition to hernia upon the right to recover compensation for injuries resulting in hernia, see *Linnane v. Aetna Brew. Co.*, L. R. A. 1917 D, 77, 111, and note; *Casper Cone Co. v. Industrial Com.*, 165 Wis. 255 (161 N. W. 784, L. R. A. 1917 E, 504). In the last mentioned case, there was an accidental slip.

We shall not further discuss the cases. To do so might be interesting, but enough has been said to show that, under our statute, the conclusion I reach is right, and in harmony with cases in other states having a statute similar to our own. Furthermore, I think there is evidence in the record sufficient to establish the fact that there was a fortuitous event or mishap, definitely described, both as to time and circumstance. It is true that claimant was unable to fix a specific date, but this was because of his faulty memory as to dates. He does give about the time it occurred, before he was compelled to quit work, June 13th; that it was 2 o'clock in the afternoon, just after he had eaten his dinner, and while lifting pieces of meat; that, while so engaged, the "first thing I observed in connection with this rupture was an awful pain struck me in there, and burning and hurting," etc. He had never had any trouble of this kind before.

Dr. Cremin, testifying for defendant, says that all hernias are caused by strain, and that a large percentage of males have congenital hernia to some extent, after they reach the age of 30 to 35 years; that any strain would have a tendency to accentuate or accelerate it. There is no evidence in the record contradicting the evidence of plaintiff and Walker as to the transaction about which they testify.

4. I think, after a careful reading of the testimony of Dr. Cremin, that there is no material conflict or contradiction in the medical testimony. A careful reading of Dr. Cremin's testimony shows that, when he testified that, in his opinion, claimant's hernia was not the result of an injury, he meant that it was not the result of an injury from a slip or accident. That was defendant's theory of the case from the start, and Dr. Cremin was called as a witness for the defendant. In addition to this, almost the first thing Dr. Cremin said in his testimony was that

plaintiff told him of no *specific* injury, and that the doctor inquired as to that. He testifies:

"I told him that, in my opinion, the defendant was not responsible."

This shows that Dr. Cremin had the thought in his mind that it was necessary that the injury should have been by a fall or slip or the like. Therefore he gives his opinion that this hernia was not traumatic in its origin. He says that a large percentage of males have congenital hernia to some extent after 30, and that any strain would have a tendency to accentuate or accelerate it. We have seen that the fact that claimant was predisposed to hernia is, under the facts in the case, unimportant. By a reference to Dr. Cremin's testimony, before set out, it will be seen that he specifically states that:

"Any sudden strain, or *anything* that will cause these substances to go through * * * or anything that would tear the covering of the intestines * * * or anything that would cause it to be forced down," etc.

In regard to the sac, he testifies finally that a recent hernia might have a thin sac. Dr. Cremin's testimony, in some respects, is stronger for the plaintiff than is the evidence of Dr. Schott. Dr. Cremin's testimony is no stronger than his cross-examination makes it. The purpose of cross-examination is to permit the witness to qualify or modify his prior statements, and this Dr. Cremin did. Again, when Dr. Cremin testifies that a traumatic hernia must have some great violence, and that, when the tissues are suddenly torn loose, there is bound to be hemorrhage and extreme pain, and so on, he is, I think, referring to a man who is well, and without any predisposition to hernia. Dr. Schott says that, and refers to a well man. Dr. Schott's testimony also shows that less force would be necessary in a man predisposed to hernia. Dr. Cremin nowhere in his evidence contradicts or denies Dr. Schott's evidence as to that. In other words, Dr. Cremin does not say, or attempt to say, that a hernia could not result from an injury suffered, as claimant and Dr. Schott testify, when there was a tendency to hernia, as was probably the fact in claimant's case. Again, Dr. Cremin testifies as to what any sudden strain would do, etc. In claimant's work, there would, of necessity, be a sudden strain every time he picked up a heavy

piece of meat. Dr. Schott says that a traumatic hernia is one that may be brought down from a strain, either sudden or from time to time, coupled with a congenital condition. This is not denied by Dr. Cremin. The congenital condition was present in claimant.

I think that, under the statute, the district court was authorized to pass upon the question as to whether there was sufficient competent evidence to sustain the finding of the commissioner, and that the court's determination that there was not sufficient evidence is justified by the record. I would affirm; and in this Mr. Justice Weaver concurs.

A majority think there was a conflict in the evidence, and therefore favor reversal, and the cause is—*Reversed.*

EVANS, C. J., STEVENS, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur in reversal.

WEAVER and PRESTON, JJ., dissent.