WARREN E. BLACK, Appellee, v. CRESTON AUTO COMPANY, Employer, EMPLOYERS MUTUAL CASUALTY COMPANY, Insurance Carrier, Appellants.

No. 44422.

AUGUST 5, 1938.

REHEARING DENIED NOVEMBER 25, 1938.

672

Miller, Miller & Miller, for appellants.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellee.

SAGER, C. J.—■ Without going into the record at length, we find it supports the conclusion that claimant suffered injuries from the careless or inadvertent use of dangerous tetra-ethyl gasoline while working for the defendant in the course of its business. Through some oversight, neglect, or mistake in providing this type of gasoline to be used, there were released gases of some sort or other which resulted in lead poisoning. The record further supports the view that on the substitution of white or plain gasoline for use in the torch poisonous gases and fumes were no longer emitted.

We find it unnecessary to set forth the nature and extent of the injuries suffered by the workman in determining the question before us.

Defendant calls our attention to a line of authorities which hold that on disputed questions of fact, and in the absence of fraud, the findings of the commissioner are binding upon the court. This is a rule so familiar and well established as to call for no citations in its support. Moreover, the commissioner in making his decision expressly avoided the questions of fact, made no findings thereon, and predicated his conclusions entirely upon the proposition which may be thus stated in general terms: Lead poisoning is a disease occupational in its inception, and expressly excluded under the workmen's compensation law. Code 1935, §1361 et seq. Lest we make an erroneous statement in this regard we quote the following from the decision filed by the commissioner:

"Here is a unique situation in which the disagreement of doctors cannot affect results of litigation.

"It is difficult to understand how claimant is able in his application for arbitration definitely to allege injury as of a particular day.

"It plainly appears of record that there was no incident of injury on May 1st or on any other day. The history given by claimant makes it manifest that disability gradually accumulated over a considerable period, nothing in the way of accident or injury occurring at any particular point of time.

"The most favorable conclusion to be reached, based upon the evidence of Dr. Beatty and the claimant himself, is that the injury had its origin in noxious fumes resulting in lead poisoning.

"In compensation jurisdiction everywhere there is practically uniform holding that lead poisoning is a disease occupational in inception and development, gradual in its encroachment and indefinite in its effect.

"Counsel seems aware of statutory exclusion of occupational disease from compensation coverage. It is contended, however, that such exclusion here does not apply due to negligence or fault on the part of the employer in the required use of a noxious product in the place of innocuous gasoline."

It follows, then, that we are called upon to decide whether or not the ill effects which claimant experienced while working for the defendant were the results of an occupational disease.

■ Defendant says that, even though claimant sustained injuries due to negligence, carelessness, or inadvertence, in the manner disclosed by this record, while not entitled to relief under the compensation act, he was nevertheless entitled to maintain an action on the facts disclosed under the common law. This is predicated, in part at least, upon the thought that because the onset of disability of the workman was slow and continuous, covering something like two years (the exact time being unimportant), and there being no evidence of a specific injury at any fixed and certain date, it was therefore an occupational disease and expressly excluded by that part of Code section 1421 hereafter set out.

Section 1363 of the Code provides:

''Except as provided by this chapter, it shall be conclusively presumed that every employer has elected to provide, secure, and pay compensation according to the provisions of this chapter for any and all personal injuries sustained by an employee arising out of and in the course of the employment, and in such cases, the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury.''

Section 1421 of the Code, so far as is material here (subdiv. 5c), provides:

''They shall not include a disease unless it shall result from the injury.''

The record discloses that in the course of the use of this blowtorch, the workman, beginning, as has been pointed out, something like two years before he was finally compelled to give up his work, suffered from growing weakness, pains, and other disabilities. He was overcome on many occasions and had to be carried out, or at least helped from the place of his employment, because of his sickness. It is true that he does not point out any certain date when this happened, nor do we regard it as necessary that he should have done so under this record. It is apparent that this workman, because of the use of the dangerous gasoline, was daily inhaling such quantities of poisonous fumes and gases as to eventually break him down. This his attending physician called, in a general way, lead poisoning; and as has been said, because of the insidious and gradual growth

of the sickness and the weakness of the workman, defendant says it was an occupational disease within the definition quoted from Code section 1421.

A large number of cases are called to our attention from foreign jurisdictions, involving what is an accident or an occupational disease, compensable under the compensation laws of the different states. A passing familiarity with the number and scope of these decisions points out the futility of analyzing even a small part thereof, and we find it unnecessary to do so. To those of the profession who might be interested in pursuing this inquiry, attention is called to the annotations appearing as follows: 6 A. L. R. 1466; 23 A. L. R. 335; 90 A. L. R. 619; 1936 A. L. R. Blue Book, and 1937 supplement thereto. On the more specific question of lead or other occupational poisonings, see annotations to 29 A. L. R. 691; 44 A. L. R. 371; 1936 A. L. R. Blue Book and 1937 supplement thereto.

As giving a general idea of the character of some of the cases upon which defendant relies, we notice a very few.

Much reliance is placed upon Adams v. Acme White Lead & Color Works, 182 Mich. 157, 148 N. W. 485, L. R. A. 1916A, 283, Ann. Cas. 1916D, 689. This is said to be a case clearly in point. We do not so read it. In that case the workman was employed in a lead plant in which lead poisoning was, in the then state of the occupation, an unavoidable incident to the work that was being done there, and in which lead poisoning might be expected to follow if the work were continued for a sufficient length of time.

Another case cited is Miller v. American Steel & Wire Co., 90 Conn. 349, 97 Atl. 345, L. R. A. 1916E, 510. This is a case involving a strictly occupational disease within the definition approved by some of the foreign jurisdictions; as is also the case of Clinchfield Carbocoal Corporation v. Kiser, 139 Va. 451, 124 S. E. 271. Also, United States Gypsum Co. v. McMichael, 146 Okla. 74, 293 Pac. 773.

Be that as it may, we have definitely adopted the rule thus quoted from Gay v. Hocking Coal Co., 184 Iowa 949, 956, 169 N. W. 360, 363:

"An 'occupational disease,' suffered by a servant or employe, if it means anything, as distinguished from a disease caused or superinduced by an actionable wrong or injury, is

neither more nor less than a disease which is the usual incident or result of the particular employment in which the workman is engaged, as distinguished from one which is caused or brought about by the employer's failure in his duty to furnish him a safe place to work. If the employer fails to provide a reasonably safe place to work, or fails to observe the specific requirements of the statute with respect thereto, and, as result of such neglect, the employe is injured, the liability of such employer cannot be avoided by calling such injury an 'occupational disease,' or by showing that disease of that nature is often the accompaniment or result of such employment, even when all due care has been exercised by the employer. * * * It may also be added, in view of the argument of counsel, that, if defendant did fail in its duty in this respect, and plaintiff was thereby physically overcome or disabled, to a degree causing him to suffer injury or loss, defendant's liability is neither avoided nor lessened by reason of the fact that plaintiff sustained no wound or bruise or other hurt of a traumatic character or origin. A wrongful injury which operates to destroy or undermine or impair the health of another is no less actionable than is a wrong from which the injured person sustains wounds or bruises or broken bones.''

This quotation appears in Dille v. Plainview Coal Co., 217 Iowa 827, at page 847, 250 N. W. 607. In the latter case the workman was a coal miner who died from acute dilatation of the heart. He had suffered no traumatic injury and no accident to indicate a definite and immediate act or incident on the day on which he died. From the record in that case it appears that the heart of the workman was put to an insufferable strain by reason of lack of fresh air. We there declared that this was not an occupational disease, but was an injury arising out of and in the course of his employment within the meaning of our compensation law.

As discussing the question generally, see the following of our decisions: Hanson v. Dickinson, 188 Iowa 728, 176 N. W. 823, in which the disability was caused by the slipping of a chisel in the hands of the workman. This injured the knee and ''lit up'' a quiescent disease. It was there held that the workman came within the provisions of the compensation law.

The case of Belcher v. Des Moines Electric Light Co., 208

Iowa 262, 225 N. W. 404, where compensation was allowed, involved a boilermaker who was overcome by heat in the course of his employment.

In line with our earlier decisions, and the last expression on the subject, is Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N. W. 35. In this case a workman employed by the defendant company was engaged in pulling up heavy clumps of bushes, during the course of which operation he sustained some sort of an injury in the region of his stomach and bowels. In that case the workman sank to the ground, put his hands in the region of his abdomen, and said: "I am sick." On being examined and operated on it was discovered that the workman's ailment was caused by a perforated ulcer. This perforation was through the center of an older one. The workman later died from pus caused by complications arising from such perforation. There it was urged that the record failed to indicate that at the time of the workman's collapse there was anything in the nature of an accident or incident out of the ordinary; there was nothing in the way of a slip or fall, or an unusual strain, as the proximate cause. In this decision the court, speaking through Justice Kindig, made an exhaustive examination of the cases applicable, and in a general way covered the whole field here laid out before us. We there said (page 732 of 218 Iowa, page 39 of 254 N. W.) :

"A personal injury, contemplated by the Workmen's Compensation Law, obviously means an injury to the body, the impairment of health, or a disease, not excluded by the act, which comes about, not through the natural building up and tearing down of the human body, but because of a traumatic or other hurt or damage to the health or body of an employee. See Madden's case (222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000), supra; In re Hurle, 217 Mass. 223, 104 N. E. 336, L. R. A. 1916A, 279, Ann. Cas. 1915C, 919; Dille v. Plainview Coal Co., 217 Iowa 827, 250 N. W. 607; Hanson v. Dickinson, 188 Iowa 728, 176 N. W. 823; Farrow v. What Cheer Clay Products Co., 198 Iowa 922, 200 N. W. 625; Belcher v. Des Moines Electric Light Co., 208 Iowa 262, 225 N. W. 404. The injury to the human body here contemplated must be something, whether an accident or not, that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or

destroys some function of the body, or otherwise damages or injures a part or all of the body. This is the personal injury contemplated by section 1421 of the 1931 Code, and if the employee's death in the case at bar resulted from such personal injury, then the claimant is entitled to compensation. Of course, such personal injury must be the result of the employment 'and flow from it as the inducing proximate cause.' Madden's case (222 Mass. 487, 111 N. E. 379, 383), supra; Smith v. Soldiers & Sailors Memorial Hospital, (210 Iowa 691, 231 N. W. 490), supra; Enfield v. Certain-Teed Products Co., (211 Iowa 1004, 233 N. W. 141), supra.

"But such personal injury need not arise out of an accident. Madden's case (222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000), supra; Hughes v. Cudahy Packing Co., 192 Iowa 947, 185 N. W. 614; Farrow v. What Cheer Clay Products Co. (198 Iowa 922, 200 N. W. 625), supra; * * *."

The opinion is too long to quote from further, but it sustains the views we had already expressed in the cases above cited, and we see no reason in the record before us to recede from the position we have heretofore taken. Without attempting to analyze into just what category the injuries the claimant herein sustained falls, it is sufficient to say that his injuries were as directly due to injury suffered by him in the course of his employment by the defendant as if he had fallen off a defective ladder or had in any way been given an unsafe place in which to work. That he was gradually stricken and frequently overcome was just as much an injury suffered in the course of his employment as if he had been stricken suddenly by some external and violent means. Whether it be put on the basis of failure to provide a safe place to work, or any other, the defendant inflicted upon its employee an injury for which he should be compensated.

The trial court embodies in its opinion and conclusions what we regard as the announcement of principles in keeping with our decisions when it says:

"In this case he was engaged as an automobile mechanic. Now in the engagement as an automobile mechanic he assumed all the risks of the employment that might bring him an occupational disease which would be the natural and ordinary results of his occupation as a mechanic for the Creston Auto

Company in the business in which he was engaged and employed. It is his claim, however, though, that the injuries that he received were received by reason of fact that the Creston Auto Company used in its business a thing that was dangerous and unsafe and a thing that caused disease to him and caused him to have lead poisoning, and that is his claim. Now, that isn't a thing that would be within the ordinary business, an occupational disease, because you wouldn't obtain lead poisoning from the ordinary occupation as an automobile mechanic in the ordinary business of the work that an automobile mechanic performs, he wouldn't obtain lead poisoning such as is claimed he did receive in this case by reason of the poisonous fumes of the gas that was used in the torch that he was using as a mechanic. Now, if the injuries for which he seeks compensation here were those arising from monoxide gas poison such as arise from motor fumes in the garage in which he was working, that would be an ordinary disease that is incident or an ordinary effect produced by the thing in which he was ordinarily engaged and employed, but the thing he claims compensation for here is the thing that arises wholly outside of the ordinary diseases, ordinary injuries that follow the usual business of an automobile mechanic. It isn't just the same as if a person was engaged in any sort of an industry in which ordinary things that may be in and of themselves somewhat dangerous to health or might cause occupational diseases. If they obtained disease under those circumstances, then it would not be subject to compensation. But, if through neglect or oversight or mistake some other poisonous substance was used, not as a part of the regular and ordinary business in which the employer was engaged, and by reason of that fact an injury occurred to him such as the loss of eyes or skin disease or things of that kind, then it isn't an occupational disease.''

With these conclusions reached, the trial court could not avoid holding that the commissioner erred in his judgment and finding. It follows that the judgment of the district court should be, and it is affirmed.—Affirmed.

All Justices concur.