Rose Belcher, Appellee, v. Des Moines Electric Light Company, Appellant.

No. 39612.

May 14, 1929.

*Bradshaw, Schenk & Fowler,* for appellant.

*Emmert, James & Needham,* for appellee.

De Graff, J.—On August 27, 1926, and for about eight years prior thereto, one Claude Belcher was employed as a boiler cleaner and inspector for the defendant Electric Light Company. On the afternoon of that day, while Belcher was acting in the due course of his employment, he died; and the primary question on this appeal involves the cause of his death. It may be stated, as a part of the history of this case, that Belcher was 43 years of age. Prior to the date of his passing, he had never made complaint as to his health, or to the character of his work, as affecting his physical condition. In fact, his general health was good; and on the forenoon of said day, he stated that he had never felt better in his life, and during the lunch hour, "joked" with his associates. The testimony of the family physician who had professionally served him and his family for about nine years disclosed that she had examined him several times, and that he had "no heart disease, brain tumor; lungs were healthy, and no symptoms of arteriosclerosis; no symptoms of heart trouble or kidney trouble; he had no serious physical or mental ailment." His physician had talked with him over the phone on that day, between 12 and 1:15 P. M., relative to Belcher's wife, who had received some minor injury; and with reference to that phone conversation, the physician stated that Belcher's voice was "clear and vigorous." Belcher had been engaged in his regular work during the morning in question, and had completed the cleaning of boiler No. 16; but when he returned to the main floor, he complained of feeling dizzy, and that he was suffering from "an awful headache." He was advised by some of his fellow workmen to discontinue his work temporarily, but later, he went back "to his job." He then entered drum No. 17, for the purpose of cleaning same. In passing, it may be said that these boilers were known as the "Sterling Type," and are numbered in the defendant's plant from south to north, from 1 to 18, consecutively. A ladder is used to go from the main floor to a platform located near the top of the boiler. Each drumhead has a covered manhole, about 9½ by 11½ inches in size, accessible from this platform, whereby the cover can be removed, so that the workman can enter the boiler for the purpose of cleaning the mud, slime, etc., that collect in said drum or boiler. It was in drumhead No. 17 that the employee Belcher was found

dead by some of his associates. At the time Belcher entered upon this particular work, boilers Nos. 1, 2, 7, 8, 9, and 18 were being fired, maintaining a pressure of from 180 to 185 pounds each. The temperature on the outside was 95 degrees in the shade. This fact was verified by the United States Weather Bureau. The evidence warrants a finding that the temperature on the platform where decedent was found, with his head and shoulders inside the drum, was 10 to 15 degrees hotter than on the floor of the firing pit. This higher temperature was caused by artificial heat. There is some conflict in the record on the question of the temperature on the platform.

There can be no question, under the record, that a conflict exists as to the theory involving the cause of the death of the workman in question; and this necessarily means a conflict in the facts. It is the claim of the defendant that the exposure to heat under the circumstances in question did not constitute an "injury," under the Workmen's Compensation Act, and further, that the death of Belcher was due to natural causes, to wit, heart lesion. It is the claim of the appellee (workman's widow) that the death of Belcher was by reason of "heat exhaustion," in the course of and growing out of his employment as a boiler cleaner and inspector in the defendant's plant. Therein lies the conflict.

True, a claimant must establish his case by preponderance of the evidence, but it has been repeatedly held by this court that the Workmen's Compensation Act forbids any trespass by a court upon the defined jurisdiction of the industrial commissioner, except in four certain and prescribed instances. Outside of these instances, the finding of the commissioner upon questions of fact is made conclusive and binding upon the court by the statute. *Rish v. Iowa Portland Cement Co.*, 186 Iowa 443; *Antonew v. N. W. States Portland Cement Co.*, 204 Iowa 1001. As to disputed facts which do not go to the jurisdiction, a court is bound by the finding of the commissioner. *Bidwell Coal Co. v. Davidson*, 187 Iowa 809. The finding of the commissioner is not to be set aside if there is any evidence upon which it can rest. *Flint v. City of Eldon*, 191 Iowa 845, with cases cited.

Section 1453, Code of 1924, is the provision of the statute to which reference must be made in the decision of this case. That

section prescribes that the order or decision of the industrial commissioner may be set aside on one or more of four grounds, but ''on no other.'' The third and fourth grounds recited in said section constitute the points or propositions relied upon by the appellant for a reversal. They are: ''3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision.'' Therefore, if the evidence before us supports the finding made by the commissioner, it may not be said that the commissioner acted without or in excess of his powers, even though a court, if trying the facts in the first instance, might reach a different conclusion.

We will not attempt to review or cite the many decisions of this court and the courts of our sister states on the propositions involved herein. The primary question, as indicated, involves a sufficiency of the facts to support the order or decree of the industrial commissioner, and whether or not there was sufficient competent evidence to warrant the making of the order by the commissioner. The appellant does not contend that the artificial heat in question did not aggravate or accelerate the death of Belcher, but asserts that it is just as reasonable to infer that his death was due to his organic heart ailment. There is some evidence that Belcher suffered from heart trouble, including the finding of the coroner of Polk County (deceased at the time of the trial) in his certificate to the department of health as to the cause of Belcher's death, which read: ''Organic heart lesion— heat exhaustion.'' There is evidence, as pointed out, to the contrary. The appellant, however, recognizes the rule that compensation must be awarded to an employee suffering some physical infirmity when it is established by competent proof that the ''injury'' sustained in the employment aggravated the infirmity and accelerated disability or death. In *Slack v. Percival Co.*, 198 Iowa 54, in which case the undisputed evidence discloses that the death resulted solely from cancer, and that the traumatic injury involved in that case was not the proximate cause of death, it is said:

''We are cited to a number of cases where, under statutes similar to ours, it has been held that, where the injury accelerated a pre-existing disease with which a workman has been afflicted,

266

and thereby hastens his death, it furnishes a case for compensation under the statute. Such may be conceded to be the rule recognized by persuasive authority.''

See *Hanson v. Dickinson*, 188 Iowa 728. The employer takes a workman as he finds him. In answer to the cause of the death of Claude Belcher, as disclosed by the evidence, it may be stated that there was no attempt to prove that Belcher was in any degree impaired in his working capacity prior to the day of his death. The numerical weight of judicial authority holds that exhaustion through artificial heat, causing the death of a workman in the course of his employment, creates a compensable injury. See *City of Joliet v. Industrial Commission*, 291 Ill. 555 (126 N. E. 618), with cases cited; *Walsh v. River Spinning Co.*, 41 R. I. 490 (103 Atl. 1025); *United Paperboard Co. v. Lewis*, 65 Ind. App. 356 (117 N. E. 276); *Kallgren v. Lundquist Co.*, 172 Minn. 439 (216 N. W. 241); *In re Claim of Hughes v. Trustees of St. Patrick's Cathedral*, 245 N. Y. 201 (156 N. E. 665); *King v. Buckeye Cotton Oil Co.*, 155 Tenn. 491 (296 S. W. 3).

''Susceptibility to risk does not prevent recovery for an injury or death proximately caused by an injury arising out of the employment. Every workman brings with him to his employment certain infirmities. They may be disabilities of age, or disabilities of infirmity not connected with age. * * * The accident arises out of the employment none the less because the remote cause is an infirmity existing when the employment was undertaken.''

This is the language of 1 Honnold on Workmen's Compensation 460, and it finds application to the facts of the instant case, and we adopt it.

It is sufficient to say that, upon a careful review of the law and the facts, we reach the same conclusion as did the industrial commissioner and the trial court.

Wherefore, the judgment entered is—*Affirmed.*

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.