**BALTIMORE & O. R. CO. v. CLARK, Deputy Commissioner of U. S. Employees' Compensation Commission, et al.**

No. 1989.

District Court, D. Maryland.

Feb. 4, 1932.

George W. P. Whip and Allen S. Bowie, both of Baltimore, Md., for Railroad Company.

George Forbes, Henry L. Wortche and Henry Glick, all of Baltimore, Md., for claimant.

Simon E. Sobeloff, U. S. Atty., of Baltimore, Md., for Deputy Commissioner.

WILLIAM C. COLEMAN, District Judge.

This is a proceeding brought by a bill in equity under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424 (33 USCA § 901 et seq.) to set aside, as not being in accordance with law, an order of the Deputy Commissioner awarding certain compensation to one of complainant's employees.

In a proceeding of this kind, this court is confined to a review of the testimony presented to the Deputy Commissioner, and cannot disturb his findings if there was competent evidence to support them. Wheeling Corrugating Co. v. McManigal (C. C. A.) 41 F.(2d) 593; see, also, Obrecht-Lynch Corp. v. Clark (D. C.) 30 F.(2d) 144.

Claimant appears as the mother and natural guardian of two acknowledged illegitimate children of one Julius Ellis, colored, who were living with and dependent upon him at the time of his death. No claim for compensation is made by her as the common-law wife of the deceased, nor is she entitled to any. Keyway Stevedoring Co. v. Clark (D. C.) 43 F.(2d) 983. The Commissioner found that the deceased, while employed on August 25, 1931, by the complainant company as a coal trimmer on vessels lying at its piers at Curtis Bay, Baltimore Harbor, suffered from heat prostration, and that his death, two days later in a Baltimore hospital, was caused by such prostration. Complainant contends that the deceased's death was not compensable under the act for the reasons, first, that his death did not occur upon navigable waters of the United States, and, second, that it was not due to an accidental injury arising out of and in the course of his employment—a prerequisite under the provisions of sections 2 and 3 of the act. 33 USCA §§ 902, 903. It is also contended that, in any event, the amount of compensation awarded is excessive, and not computed in accordance with the requirements of the act.

■ It appears that on August 25, 1931, the deceased, thirty-three years of age, worked as a coal trimmer on two vessels lying at the complainant's piers, his work being that of shoveling coal into the bunkers of these vessels, and that he was so engaged from 7 o'clock in the morning until 11:30 at night, with an intermission of only three or four hours in the afternoon, a rush job incident to early departure of the vessels. The temperature in these bunkers, which were close to the boilers (in which there was steam), was high and the atmosphere bad, although the exact temperature and conditions are not in evidence. The outside temperature on that day, as disclosed by Weather Bureau reports placed in evidence, reached a maximum of eighty-eight degrees, or three degrees in excess of normal, with rather high humidity. A number of other employees were engaged in similar work alongside of decedent, but none of them suffered any bad effects. While working decedent complained of cramps in his fingers, and, upon returning home, suffered from severe cramps in the muscles of various parts of his body, was in considerable pain throughout the evening, but, at 6 o'clock the next morning, returned to the piers; and from 9 to 10:30 a. m. worked in one of the coal pits in the open air. There is no evidence or claim that the weather was abnormally hot at this time. Thereafter he was again taken ill with muscular cramps, nearly collapsed, and was removed to a hospital where his case was diagnosed as one of heat prostration. For a while he responded to medical treatment, but at about noon of the following day, August 27th, he grew rapidly worse and died about 5 o'clock. Decedent had been doing similar work as a coal trimmer for the same company in vessels and on the piers for several years preceding, with no evidence of ill health.

At the hearing before the Deputy Commissioner, in addition to the claimant, those who testified on her behalf were decedent's mother, seven coworkers, all of whom were working with him in the bunkers on August 25th and stated they heard him complain then of cramps in his fingers; one of the company's doctors who treated him at the pier before his removal to the hospital, and another physician, who did not, however, attend him. On behalf of the complainant company, there were produced as witnesses the representatives of the company who were in charge of the gang or crew in which the decedent was working, and three physicians. One of the two doctors testifying for complainant was in the employ of the company and had given the decedent emergency treatment, and, while he had diagnosed the case as one of heat exhaustion, stated that the conditions under which decedent worked were not sufficiently adverse to have been the cause of such exhaustion, which he therefore attributed to some undisclosed condition. The other doctor (testifying solely as an expert) gave as his opinion that heat exhaustion or prostration was the cause of death, and that the attack on the first day was the primary one and produced the fatal illness, the attack on the second day being considered merely a recurrence.

All three of the physicians who testified for the complainant company gave as their opinion that the cause of death was heat exhaustion. The testimony of one of them is very meager, and does not attempt to fix the exact origin of the illness. Another testified that the heat prostration which resulted in death did not occur on the 25th, in the course of decedent's work that day, but occured on the 26th, giving as his reason the fact that decedent had not collapsed to such an extent on the previous day or evening as to prevent his returning to work, as he was able to do, even though for a short period of time. Both of these physicians had attended the decedent at the hospital. The third and remaining physician, who never attended decedent, also gave as his opinion that the cause of death was the prostration which occurred on the second day, not on the first; the collapse and exhaustion on the first day not being, as he maintained, so complete as to justify a conclusion of causal connection with the fatality.

We have no hesitation in concluding that the Deputy Commissioner was correct, on the evidence as a whole, in holding that decedent's death on August 27th was the direct result of what happened on the first day while decedent was working in the bunkers of the vessels, and that the more complete prostration on the following day, which culminated in his death, was merely a recurrent attack of the original prostration; in other words, that there was a direct causal connection between the illness of the first day and the death. The endeavor on the part of the company's physicians to belittle the first illness and to treat the two illnesses as wholly distinct is, we think, entirely unconvincing, and unsupported by any rational or natural inference from the proved facts of the case. The comparatively short period of time that elapsed between the first and second illness, together with the very small amount of moderate exertion which decedent

made, all in the open air, on the second day before he completely collapsed, tend to negative the reasonableness of these physicians' diagnoses. But even assuming that there is some basis for accepting this theory of the case, the court is not permitted to do so and to reject the conclusion of the Deputy Commissioner, because, as long as any substantial evidence exists to support the latter's conclusion, the court cannot, as we have seen, reject it. The Deputy Commissioner functions as a fact-finding body, and this court has no power to overthrow his conclusions with respect to the facts unless they are "not in accordance with law." Wheeling Corrugating Co. v. McManigal, supra.

The probative weight of evidence, of whatever kind, is not to be measured by a numerical basis. Thus medical testimony may be totally rejected. In the present case the admitted conditions surrounding the work in which the deceased was engaged on the first day, in contrast with those on the second day, the time and character of his first illness and of its recurrence, are alone sufficient to make reasonable the inference that the deceased was prostrated while working in the bunkers on the first day, and that this prostration or its effects recurred, due to exertion on the following day. This conclusion is not devoid of support by the medical testimony, because one of the hospital physicians who attended the deceased, and who was produced as a witness by complainant company, diagnosed the case as one of heat exhaustion; and, although he did not attempt to fix the time when the prostration had its inception, it is certainly not an unreasonable inference from this physician's testimony that it began on the first day. Also, one of claimant's medical witnesses flatly so testified.

Having thus concluded that the heat prostration was the direct cause of Ellis' death, and that it arose "in the course of" decedent's employment upon navigable waters, that is, while he was working in the vessels' bunkers on August 25th, we further conclude that it arose "out of" such employment because it not only occurred in the course of such employment, but such employment was a proximate cause of it, since it was a direct incident of such employment which involved greater exposure to heat prostration than that to which persons generally are exposed.

The next question to be determined is whether the injury, that is to say, the heat prostration, was "accidental," because only accidental injury and death are compensable under the act. Here again, we find no difficulty in supporting the findings of the Deputy Commissioner that heat prostration is to be treated as an accidental injury when, as here, the nature of the employment is such that it exposes the workman to risk of such injury, and this is true whether the heat prostration is produced by artificial heat or by natural heat of the sun. Such is supported by the weight of authority in this country, although in England the principle appears to be limited to cases of artificial heat stroke. Belcher v. Des Moines Electric Light Co., 208 Iowa, 262, 225 N. W. 404, and cases cited; Kanscheit v. Garrett Laundry Co., 101 Neb. 702, 164 N. W. 708; Hughes v. St. Patrick's Cathedral, 245 N. Y. 201, 156 N. E. 665; Lane v. Horn & Hardart Baking Co., 261 Pa. 329, 104 A. 615, 13 A. L. R. 963; Ismay, Imrie & Co. v. Williamson, 1908 A. C. 437; Schneider on Workmen's Compensation (2d Ed.) vol. 1, §§ 249 and 333, and cases cited. We do not subscribe to the minority doctrine that, before heat prostration may be held to be compensable, such must be shown to have been occasioned by some unusual and extraordinary condition of the employment, not naturally and ordinarily incident thereto. This narrower doctrine, to be sure, is upheld in some jurisdictions, notably in Maryland. See Slacum v. Jolley, 153 Md. 343, 138 A. 244; Miskowiak v. Bethlehem Steel Co., 156 Md. 690, 145 A. 199. But we are not bound by these Maryland decisions first, because they do not construe the statute here involved, but the Maryland Workmen's Compensation Act, albeit the language of which on this precise point is substantially the same; and, secondly, federal courts in construing a federal statute are not bound by state decisions. However, it is to be noted that the New York Workmen's Compensation Act (Consol. Laws N. Y. c. 67), after which the law here involved is primarily patterned, Wheeling Corrugating Co. v. McManigal; Obrecht Lynch Corp. v. Clark, supra, has been construed as making compensable injury by heat prostration. The present statute is to be given a reasonably broad construction. Injury due to exposure to excessive cold is generally held compensable. The principle is the same. See cases collected in Schneider, supra, vol. 1, § 192.

There remains, therefore, only one further question for our consideration, namely, whether the award made by the Deputy Commissioner was properly computed. Decedent at the time of his death was earning

$3.68 a day, and thereupon the Deputy Commissioner awarded compensation on the basis of an average weekly wage of $21.23; that is to say, the Deputy Commissioner has multiplied the daily wage last earned by decedent by three hundred, and then divided by fifty-two. Complainant company, however, contends that this method of computation is contrary to a correct interpretation of section 10 of the act (33 USCA § 910), since the decedent's work was spasmodic, and since, as also admitted by the evidence, he earned throughout the year immediately prior to his death only $578.75. This latter figure complainant contends is the one which should be divided by fifty-two, thereby making the average weekly wage less than the $12 minimum provided by section 9 (e) of the act (33 USCA § 909).

We think complainant is wrong, and that the method adopted by the Deputy Commissioner is entirely consonant with section 10 of the act. The same question arose in the case of Gunther v. U. S. Employees' Compensation Commission, 41 F.(2d) 151, a decision of the Circuit Court of Appeals for the Ninth Circuit, and, since the pertinent subdivisions (a), (b), (c), and (d) of section 10 are there quoted from and analyzed, we do not requote them. The court in that opinion said, page 154:

"The provisions of subdivision (b) should have been applied, as, in the language of the statute, those provisions can 'reasonably and fairly be applied.' At the time of his death and for a long time prior thereto decedent had been following the occupation of a stevedore or longshoreman. Confining the evidence respecting time of employment to that considered by the deputy commissioner, it establishes that decedent had worked at his occupation for at least several months of the year. In such case compensation is not based upon the amount actually received during the time employed as determined by the deputy commissioner, but, as subdivision (b) provides: 'His average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment * * * shall have earned in such employment during the days when so employed.' Here apparently we have the case of a man ready, able, and willing to work at his calling. It was clearly the purpose of Congress that in case of the accidental injury or death of such an employee during the course of his employment his ability to earn should be the primal basis of determining compensation. Three bases for such a determination were prescribed in the statute. If the employee had worked 'substantially the whole of the year,' as specified in subdivision (a), his total income was to be taken as the basis of award. If, however, he had not been employed for substantially that length of time, then his earning power as a basis of compensation is to be determined, as provided in subdivision (b), by taking the average daily wage of other employees 'of the same class working substantially the whole of such immediately preceding year.' Where the award is made under subdivision (c) actual earnings are not controlling, but the conclusion to be arrived at is a sum which 'shall reasonably represent the annual earning capacity.'

"It is clear in this case that the $893.96, taken as the basis for computing appellant's compensation, did not 'reasonably represent the annual earning capacity' of the decedent, nor does it represent approximately the amount of wages which 'an employee of the same class working substantially the whole of such immediately preceding year * * * shall have earned in such employment during the days when so employed.'

"An employee for some reason may have been unable to have worked at any employment for all or the greater portion of the year preceding an accident. He may meet with an accident the first day of his employment. In such case his prior lack of earnings or of earning capacity, particularly the reason therefor, while a proper matter to be considered in determining his earning power at the time of the accident, nevertheless, it is that earning power which is the ultimate fact to be determined in the manner prescribed by the statute. The statute in express terms establishes a liberal rule for the determination of the facts. Section 923. It also fixes a limit beyond which 'average weekly wages' are not to be taken into account 'in computing death benefits.' Section 909 (e). In these provisions Congress had in view the protection of both the employer and the employee, or the latter's beneficiaries."

We adopt the aforegoing reasoning as sound and applicable to the present case. See, also, Baltimore & Carolina S. S. Co. v. Norton (D. C.) 40 F.(2d) 271.

The compensation order of the Deputy Commissioner is accordingly affirmed, and the bill of complainant must be dismissed.