AMANDA G. ALMQUIST, Appellee, v. SHENANDOAH NURSERIES, INC., et al., Appellants.

No. 42358.

APRIL 3, 1934.

REHEARING DENIED SEPTEMBER 27, 1934.

Huebner & Huebner and H. B. White, for appellants.

Ferguson & Ferguson, for appellee.

KINDIG, J.—Luther L. Almquist was employed by the Shenandoah Nurseries, Incorporated, a defendant and appellant, on the 3d day of May, 1932. He had been thus employed by the nursery company since the preceding March. His employment required that he and other workmen pull "up and shake out" barberry bushes. The barberry bushes were thus pulled up and shaken out by the use of a tree plow which loosened the roots, and then by the men, who would break the dirt apart from the bushes with a spade or stick. Some of the men would shake the bushes and pound them with a stick. Two or more bushes sometimes would be bunched together with a clump of dirt "weighing all the way from a few pounds to 250 pounds." When the bushes thus clung together and were supported by a clump of dirt, the workmen pulled them apart by hand or pried them apart with a spade. If the bushes were especially large or securely entwined, it required a hard pull to separate them.

Almquist, while working on May 3, 1932, at about 10 o'clock a. m., sank to the ground or "keeled over," put his hand in the region of his abdomen, and said: "I am sick." Then he started to an automobile and again sank to the ground. Finally Almquist was assisted into the automobile and driven to his home, where first aid was administered. Thereafter Almquist was taken to the hospital in Shenandoah, where he was operated on by Dr. A. O. Wirsig. The

doctor diagnosed Almquist's ailment as that caused by a perforated ulcer. An anesthetic was administered to Almquist and an incision made in "a mid-line" across the region of his stomach and bowels. After opening the abdomen, the doctor examined Almquist's bowels and found them to be normal. It was disclosed, however, by the operation that the anterior part of the stomach was perforated. This perforation was near the outlet. There was only one perforation. Upon further examination the doctor discovered that the perforation was through the center of an old ulcer in the stomach. The ulcer, an inch in diameter, was surrounded by scarred tissue. Because of the perforation, the contents of the stomach had almost completely emptied into the abdominal cavity. After finding that condition, the doctor closed the perforation and sponged out the stomach. Almquist remained at the hospital until May 31st, when he was removed to his home. Subsequently, on June 8th, Almquist returned to the hospital, and remained there until he died on June 17th. His death was caused by "an empyema" due to "pus forming after a complication of perforation" of an ulcer.

The United States Fidelity & Guaranty Company, a defendant and appellant, insured the liability of the appellant Shenandoah Nurseries, Incorporated, under the Iowa Workmen's Compensation Act. Following Almquist's death, his widow, Amanda G. Almquist, the claimant-appellee, asked compensation for the aforesaid injury and death from the Shenandoah Nurseries, Incorporated. Such compensation was refused, and, as said in the preliminary statement, an action was instituted therefor and first tried before the Honorable Ralph Young, deputy industrial commissioner, sitting as the sole arbiter. He denied the compensation. A petition for review was then filed by the claimant with the industrial commissioner, who, regardless of the facts revealed by the record, decided that Almquist's injury and death did not "arise out of and in the course of his employment." Concerning this the industrial commissioner stated:

"The record utterly fails to show or to indicate that at the time of this collapse (when Almquist sank to the ground while working) there was anything in the nature of accident, or incident out of the ordinary * * * There was nothing in the way of a slip, a fall or unusual strain as proximate cause."

An appeal was taken from that ruling to the district court,

where the decision of the industrial commissioner was reversed, and compensation allowed. From the judgment allowing compensation, the appellants appeal.

I. In order for the claimant to obtain compensation for the employee's death, it was necessary for her to prove, by a preponderance of the evidence, that the death was caused by a "personal injury" (see section 1421, 1931 Code) "arising out of and in the course of the employment." See section 1377, 1931 Code. "The burden is upon the plaintiff (claimant) to establish by a preponderance of the evidence that the injury which he claims caused the disability arose out of and in the course of his employment." Smith v. Soldiers & Sailors Memorial Hospital, 210 Iowa 691, 231 N. W. 490. To the same effect, see Enfield v. Certain-Teed Products Co., 211 Iowa 1004, 233 N. W. 141. This does not mean, however, that such proof must satisfy beyond a reasonable doubt. Jones v. Eppley Hotels Co., 208 Iowa 1281, 227 N. W. 153; Flint v. Eldon, 191 Iowa 845, 183 N. W. 344.

It is said by the appellants that the evidence relating to the employee's injury and death is insufficient, or at least in conflict, and therefore the finding of the industrial commissioner cannot be disturbed. If the evidence upon the point in question is in conflict, then, of course, the finding of the industrial commissioner is binding on this court. Enfield v. Certain-Teed Products Co., supra; Jones v. Eppley Hotels Co., supra; Belcher v. Des Moines Electric Light Co., 208 Iowa 262, 225 N. W. 404; Arne v. Western Silo Co., 214 Iowa 512, 242 N. W. 539; Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, 226 N. W. 719; Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395, 214 N. W. 585; Kraft v. West Hotel Co., 193 Iowa 1288, 188 N. W. 870, 31 A. L. R. 1245.

But, on the other hand, the courts may interfere with the findings of the industrial commissioner under the circumstances authorized by section 1453 of the 1931 Code. According to that section:

"Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * * 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

So, if, as contemplated by the statute just quoted, the evidence does not sustain the conclusion reached by the industrial commissioner, then the courts may set aside, modify, or reverse his ruling. Arthur v. Marble Rock Consolidated School District, 209 Iowa 280, 228 N. W. 70, 66 A. L. R. 718; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254; Petersen v. Corno Mills Co., 216 Iowa 894, 249 N. W. 408; Tunnicliff v. Bettendorf, 204 Iowa 168, 214 N. W. 516. To illustrate, we said in the Tunnicliff case, reading on page 170:

"There is no merit in appellant's contention that the findings of fact of the industrial commissioner are conclusive. As we have said, there was no conflict in the evidence; and if the facts found by the commissioner do not support the order made by him, or if there is not sufficient competent evidence to support the finding, the order based thereon may be reviewed and set aside by the court. * * * *It is only where there is a conflict in the evidence that the findings of fact of the commissioner are conclusive.*" (Italics supplied.)

Of course, by the statement in the Tunnicliff case, supra, which we have italicized, this court did not mean to express the idea that the district court could interfere with the findings of the industrial commissioner where the facts are one-sided, but all in favor of his ruling. See Enfield v. Certain-Teed Products Co., supra.

When the industrial commissioner's finding, however, is not supported by the evidence, and when, on the other hand, the evidence is without conflict and all of it is against the conclusion reached by him, then the courts may interfere and modify, set aside, or reverse his ruling, as shown by the cases above indicated.

II. As suggested in his findings, the industrial commissioner disallowed compensation because he concluded that the claimant had not met her burden of proving that the injury to the employee was caused by "an accident or incident out of the ordinary." By that statement of the industrial commissioner, it is apparent that he was laboring under the impression that the claimant could not receive the compensation unless she proved that the injury to the employee rose out of an accident or unusual incident.

A review of the Iowa Workmen's Compensation Act will reveal that the statute does not make an accident or an unusual incident the basis for the allowing of compensation. Under section 1421 of

the 1931 Code, certain definitions are set forth for the interpretation of the act. They are, so far as material here:

"In this and chapters 71 and 72, unless the context otherwise requires, the following definitions of terms shall prevail: * * * 5. The words 'injury' or 'personal injury' shall be construed as follows: a. They shall include death resulting from personal injury. b. They shall not include injury caused by the wilful act of a third person directed against an employee for reasons personal to such employee, or because of his employment. c. They shall not include a disease unless it shall result from the injury."

Subdivision b of section 1421, just quoted, is not involved in the present controversy. Therefore the underlying problem presented is whether the death of the employee resulted from a "personal injury" as contemplated by the Iowa Workmen's Compensation Act. Certain diseases and injuries, as already indicated, are excluded from the act. For instance, an intentionally self-inflicted injury is not included. See section 1376 of the 1931 Code. If intoxication of the employee is the proximate cause of his injury, he cannot recover compensation under the act. By this enumeration of exclusions of injuries, we have not intended to be all-inclusive. Our purpose here only is to give illustrations to assist in defining what, in fact, is included within the term "personal injury" under the act.

As a matter of convenience, we will divide, as has been suggested, the industrial commissioner's findings into those relating to the absence of evidence of accident and those relating to the absence of evidence of a special or an unusual incident. The first phase of this classification will be considered in this division, and the other phase thereof will be reviewed in another division.

Does the act require that the personal injury shall grow out of an accident? It is argued by the appellants that this is true; while, on the other hand, it is contended by the claimant that an accident in no event is essential. In the statutory definition of personal injury, the word "accident" is not included. There is only one prerequisite in the statute at this point and that is that there be a personal injury. An injury, according to Webster's New International Dictionary, means: "Damage or hurt done to or suffered by a person or thing." Of course, "injury" is "a generic term, which, in ordinary modern usage, is of very broad designation, having numerous and comprehensive popular meanings, as well as having

a legal import." See 32 Corpus Juris, pp. 514 and 515. Speaking generally, a personal injury "is an injury to the person of an individual; * * * in a restrictive sense, the equivalent of bodily injury." 32 Corpus Juris, p. 520.

When arriving at a definition of "personal injury" under the Iowa Compensation Act, of course, it is essential to keep in mind the history and the purpose of the act. At this point it is necessary to have in mind the exclusions made by the legislature. While a personal injury does not include an occupational disease under the Workmen's Compensation Act, yet an injury to the health may be a personal injury. Dille v. Plainview Coal Co., 217 Iowa 827, 250 N. W. 607; and for a case on the general subject outside of the Workmen's Compensation Act, see Gay v. Hocking Coal Co., 184 Iowa 949, 169 N. W. 360. Likewise a personal injury includes a disease resulting from an injury. See subdivision c, par. 5 of section 1421 of the 1931 Code. Manifestly the personal injury contemplated by the statute does not include metabolism. A metabolism, according to Webster's New International Dictionary, means "the sum of the processes concerned in the building up of protoplasm and its destruction incidental to the manifestation of vital phenomena; the chemical changes proceeding continually in living cells; metabolism may be constructive or destructive." The result of changes in the human body incident to the general processes of nature do not amount to a personal injury. This must follow, even though such natural change may come about because the life has been devoted to labor and hard work. Such result of those natural changes does not constitute a personal injury even though the same brings about impairment of health or the total or partial incapacity of the functions of the human body. Industrial Commission of Ohio v. Franken, 126 Ohio St. 299, 185 N. E. 199, local citation 200.

It was said by the Massachusetts Supreme Court in Madden's case, 222 Mass. 487, 111 N. E. 379, reading on page 383, L. R. A. 1916D 1000:

"A disease which under any rational work is likely to progress so as finally to disable the employee, does not become a 'personal injury' under the act (Massachusetts Workmen's Compensation Act) merely because it reaches the point of disablement while work for a subscriber is being pursued. It is only when there is a direct causal connection between the exertion of the employment and the

injury that an award of compensation can be made. The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause."

A personal injury, contemplated by the Workmen's Compensation Law, obviously means an injury to the body, the impairment of health, or a disease, not excluded by the act, which comes about, not through the natural building up and tearing down of the human body, but because of a traumatic or other hurt or damage to the health or body of an employee. See Madden's case, supra; In re Hurle, 217 Mass. 223, 104 N. E. 336, L. R. A. 1916A 279, Ann. Cas. 1915C 919; Dille v. Plainview Coal Co., supra; Hanson v. Dickinson, 188 Iowa 728, 176 N. W. 823; Farrow v. What Cheer Clay Products Co., 198 Iowa 922, 200 N. W. 625; Belcher v. Des Moines Electric Light Co., 208 Iowa 262, 225 N. W. 404. The injury to the human body here contemplated must be something, whether an accident or not, that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or destroys some function of the body, or otherwise damages or injures a part or all of the body. This is the personal injury contemplated by section 1421 of the 1931 Code, and if the employee's death in the case at bar resulted from such personal injury, then the claimant is entitled to compensation. Of course, such personal injury must be the result of the employment "and flow from it as the inducing proximate cause." Madden's case, supra; Smith v. Soldiers & Sailors Memorial Hospital, supra; Enfield v. Certain-Teed Products Co., supra.

But such personal injury need not arise out of an accident. Madden's case, supra; Hughes v. Cudahy Packing Co., 192 Iowa 947, 185 N. W. 614; Farrow v. What Cheer Clay Products Co., supra; Hanson v. Dickinson, supra; Dille v. Plainview Coal Co., supra. When discussing this question in Hanson v. Dickinson, supra, we said, reading on page 733:

"The Workmen's Compensation Act dispenses with the necessity of any showing of negligence, contributory negligence and the like, and adopts as the standard or condition that the injury must have been personal and have arisen 'out of and in the course of the employee's employment.' * * * It is urged, however, that, under the definition 'personal injuries' in paragraph g in section 2477-m16, Code Supp. 1913 (now section 1421 of the 1931 Code), a pre-

existing disease ought not to be considered, even though 'lighted up' or accelerated by the injury. The paragraph reads: 'They (personal injuries) shall not include a disease (occupational disease), except as it shall result from the injury.' In the English act, as well as those of most of the states, the remedy provided is for 'personal injury by accident,' and this is held to exclude diseases other than those in consequence of the injury. Manifestly the term 'personal injuries' *is of much broader significance than* 'personal injury by accident.' It comprehends a great number of injuries, many of which will be found enumerated in Hurle's case, 217 Mass. 223, Ann. Cas. 1915C, 919, and in Madden's case, 222 Mass. 487, 489, 111 N. E. 379." (Italics supplied.)

It is enlightening to read excerpts from Madden's case, supra, at this place in further explanation of the fact that not all compensation acts require that the personal injuries arise from an accident. There it is said on page 380 of 111 N. E.:

"The standard established in this respect by our (Massachusetts) Workmen's Compensation Act as the ground for compensation is simply the receiving of 'personal injury arising out of and in the course of' the employment. This standard is materially different from that of the English act and of the acts of some of the states of this nation. That standard is 'personal injury by accident.' * * * The difference between the phraseology of our act (the Massachusetts act) and the English act in this respect cannot be regarded as immaterial or casual."

Continuing, the Massachusetts court said, on page 381 of 111 N. E.:

"In any event, decisions made as to workmen's compensation acts which base compensation upon 'personal injury by accident' instead of upon 'personal injury' well may be and may be expected to be divergent from our own and compensation be denied under them which would be awarded under ours. * * * Actions *for personal injury arising from disease contracted in the course of employment and without physical impact are not uncommon where the other elements exist to establish liability.*" (Italics supplied.)

In the Iowa act, as in the Massachusetts act, the prerequisite for compensation is that the injury be a personal injury, as distinguished from a personal injury caused by accident. Because of the

difference between the phraseology of the Iowa act and the language of the acts in many states of the Union, it is obvious that what the courts may have said there is not controlling here. Regardless of that, we are committed in Iowa to the proposition that the personal injury contemplated by the act need not be one caused by an accident. Hanson v. Dickinson, supra; Hughes v. Cudahy Packing Co., supra; Dille v. Plainview Coal Co., supra.

Therefore, the commissioner erred in holding that before the claimant could recover she must prove that the employee's death resulted from a personal injury arising out of an accident. Notwithstanding the fact that the personal injury did not grow out of an accident, this would not bar the right of the claimant to recover compensation, provided the employee's death resulted from a personal injury as herein defined and contemplated by section 1421 of the 1931 Code.

III. It is next necessary to determine whether the commissioner committed an error of law in finding that the claimant could not recover compensation for the employee's death unless she proved that the personal injury was caused by a special incident or an unusual occurrence.

Her husband, the employee, with one exception was the oldest man on the job. The work was exceedingly heavy because it required much lifting, pulling, and prying. Immediately after the accident, the employee stated to the doctor that he was injured in pulling. This statement was clearly part of the res gestæ. Farrow v. What Cheer Clay Products Co., supra. An argument is made by the appellants upon the theory that the record lacks proof that the employee at the time in question was performing this heavy work. But a careful reading of the entire record reveals without contradiction that he was doing heavy work at the time he sank to the ground. As a matter of fact, there is no substantial evidence to the contrary even when considering the inferences to be drawn from evidence. Because the work was so heavy, the men who did it were called "the bull gang". Such heavy work caused a straining of the stomach of the man who performed it.

Dr. Wirsig, who attended the employee, testified that the strain incident to the work was the proximate and only cause of the perforation of the stomach. It was said by the doctor that there would have been no perforation had it not been for the strain of the work. Likewise the doctor testified that the ulcer itself would not have

perforated naturally, but that the perforation necessarily came from the work. While some statements were injected into the record concerning the fact that the employee had used intoxicating liquors Sunday or Saturday night before his injury, yet the doctor emphatically testified that the drinking of liquor, if it were done, did, and could, not cause the perforation of the ulcered stomach. There is no evidence to the contrary.

Manifestly, therefore, the straining in doing the work caused the personal injury to the employee. That being true, it was not necessary for the claimant to prove any other special incident or any other unusual occurrence. Dille v. Plainview Coal Co., supra; Buncle v. Sioux City Stock Yards Co., 192 Iowa 555, 185 N. W. 139; Zappala v. Industrial Insurance Commission, 82 Wash. 314, 144 P. 54, L. R. A. 1916A 295; Southern Casualty Co. v. Flores (Tex. Civ. App.) 294 S. W. 932; Central Surety & Insurance Corporation v. Industrial Commission of Colorado, 84 Colo. 481, 271 P. 617. See, also, Johnson v. La Bolt Oil Co. (S. D.) 252 N. W. 869. As said by the Court of Civil Appeals of Texas, in Southern Casualty Co. v. Flores, supra, reading on pages 933, 934:

"If in doing his work the employee, in a *usual or unusual manner*, lifts an object, or stoops, or takes a step, or makes any movement of his limbs or body, and such exertion unexpectedly and unintentionally results in an injurious strain upon his nerves, muscles, heart, or any other organ, so as to incapacitate him for work, the event or result is an injury as contemplated in the act, and entitles him in the case of mere disability, or his heirs or representatives, in the case of his death, to compensation." (Italics supplied.)

To the same effect, it is said by the Washington Supreme Court, in Zappala v. Industrial Insurance Commission, supra, reading on page 55 of 144 P.:

"To hold with the Commission that if a machine breaks, any resulting injury to a workman is within the act, but if the man breaks, any resulting injury is not within the act, is too refined to come within the policy of the act as announced by the legislature in its adoption and the language of the court in its interpretation."

Confusion at times may have arisen because the distinction has not always been recognized between a statute providing for

compensation for an injury caused by accident and a statute allowing compensation for a personal injury with or without the accident.

The right of the claimant to recover in the case at bar under the Iowa act is not based upon a special incident, or an unusual occurrence. On the other hand, her right to recover is based upon her proof that the injury received by the employee is a personal injury (as defined in division I of this opinion) arising out of and in the course of the employee's employment, and her proof that such injury was the proximate cause of the employee's perforated stomach and his resulting death. See cases above cited. The entire matter is a question of proof at this point. If the claimant proves that the employee's death was caused by a personal injury arising out of and in the course of the employment, she need not show any other special incident or unusual occurrence. A special incident or unusual occurrence is not material except to prove the personal injury. So, if the personal injury is proven by other evidence, then the special incident or unusual occurrence becomes immaterial. Possibly there are many cases under different records where the employee may not have proved that he received a personal injury in his work without showing some special incident, but even in those instances the necessity of showing the special incident would be to prove personal injury and not to lay the foundation otherwise for compensation.

In the case at bar the personal injury was proven when it was shown by the record that the perforation of the employee's stomach did not result from the natural processes of nature, but occurred only because of the heavy work, and that such perforation arose out of and in the course of the employee's employment. Even though the employee's stomach may have been weakened by the ulcer, that alone does not prevent the recovery of compensation. Perhaps the ulcer made the employee's stomach easier to perforate; but that does not mean that the injury which he received is not a personal injury under the statute. Hanson v. Dickinson, supra; Farrow v. What Cheer Clay Products Co., supra; Fraze v. McClelland Co., 200 Iowa 944, 205 N. W. 737. It has been decided that the perforation of a diseased intestine by slight pressure such as would be harmless to a healthy person is a personal injury. Madden's case, supra.

Nowhere in the record is there any dispute on the material facts. Consequently the appellee, without controversy, proved that there

was a personal injury which caused the employee's death, and that the same arose out of and in the course of the employee's employment. ·Hence, the commissioner erred as a matter of law in finding that she was not entitled to compensation, and the district court properly reversed him. See section 1453 of the 1931 Code.

■ IV. But it is contended by the appellants that the district court erred in assessing the compensation. It fixed the compensation at the rate of $13.50 per week for a period of three hundred weeks. That is the amount of the weekly wage that was earned by the employee. According to the appellants, the weekly compensation should be only 60 per cent of the average weekly earnings.

Section 1390 of the 1931 Code provides, so far as here material, that the " * * * compensation shall be upon the basis of sixty per cent per week of the average weekly earnings. * * * " Following section 1390 is section 1392 of the same Code. This latter section, according to its context, must necessarily be read with, and it is modified by, section 1390, above mentioned. Section 1392 reads:

"When death results from the injury, the employer shall pay the dependents who were wholly dependent on the earnings of the employee for support at the time of his injury, *the weekly compensation* for a period of three hundred weeks from the date of his injury."

The question then arises as to what is meant by "weekly compensation" in section 1392. Some light is thrown upon this inquiry by the provisions of section 1390, before mentioned. In section 1390 reference is made to the word "compensation" and to the words "average weekly earnings." It is apparent that the word "compensation," as used in section 1390, is not the same as the words "average weekly earnings" used therein. Clearly the words "average weekly earnings" mean the wages or salary which the employee was earning; while "compensation" means, so far as the case at bar is concerned, 60 per cent thereof. So, when section 1392 uses the word "compensation," it refers back to the word "compensation," as distinguished from the words "average weekly earnings," used in section 1390. If the legislature did not mean compensation as thus interpreted in section 1392, it would have used the words "weekly wage." Consequently the district court erred in fixing the compensation at $13.50 a week. The compensation should have been 60

per cent thereof. To this extent, the judgment of the district court is modified.

■ V. Finally, it is claimed by the appellants that the district court erred in allowing Dr. Wirsig $318 for medical services rendered the employee. Such allowance on the part of the district court was error, the appellants argue, because there was no request for such medical services, as required by section 1387 of the 1931 Code. That section, so far as material, provides:

"In addition to other compensation hereinafter provided for, at the time of the injury and thereafter during the disability, but not exceeding four weeks of incapacity, the employer, *if so requested by the employee, or anyone for him, or if so ordered by the court or industrial commissioner*, shall furnish reasonable surgical, medical, and hospital services, and supplies therefor. * * * "

In reply to this contention of the appellants, it is said by the claimant that "no doubt in the stress and excitement produced by his injury (the employee's) the decedent and his family did neglect to make any formal demand upon the insurer (or the employer) for medical services, and also probably neglected to study the statute relating to such procedure." There is no claim by the claimant that the industrial commissioner, or the court, was asked to or did order such medical services. Consequently, it is apparent that the statute has not been complied with.

This is a special proceeding and the medical services are to be paid for by the employer and his insurer only under the terms of the statute. If the terms of the statute relating to such payment have not been met, then, of course, the courts cannot order the payment. So, to the extent that these medical services were allowed, the judgment of the district court is further modified.

Attention has now been given to all material questions before us.

Wherefore, except as hereinabove modified, the judgment of the district court is affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, ALBERT, ANDERSON, KINTZINGER, MITCHELL, and DONEGAN, JJ., concur.