Maggie E. West, Claimant, Appellant, v. Claude A. Phillips, Defendant, Appellee.

No. 44953.

614

NOVEMBER 21, 1939.

REHEARING DENIED MARCH 9, 1940.

Miller, Huebner & Miller, for appellant.

Sterling Alexander, for appellee.

STIGER, J.—The defendant is engaged in the bakery business in Webster City. On and prior to August 8, 1934, Robert West was employed by defendant as a baker on the night shift. While working in the bakeshop on the night of August 8, he became ill and departed this life the next morning. Claimant, widow of Mr. West, alleged he sustained a personal injury arising out of and in the course of his employment by exposure to excessive heat in the bakery caused primarily by artificial heat which resulted in heat exhaustion or heatstroke and his death.

Defendant denied that decedent received a personal injury arising out of and in the course of his employment and averred there was no causal connection between his death and his employment. It is the contention of defendant that the heat conditions in the bakeshop were due entirely to natural heat and that death was the result of a diseased heart and arteries.

The bakeshop was in a brick building, facing north, owned by defendant. The front or north room of the building was used for retail sales of bakery products. South of this room is the supply room and the bakeshop is south of the supply room.

South of the bakeshop there is a storeroom. This building had a second story extending over the retail and supply rooms but not over the bakeshop or storeroom. A basement was under the two northernmost rooms but did not extend under the bakeshop. The shop was 22 feet wide, 45 feet long and 13 feet high. On the west side of the shop there was a window, 3½ feet by 7 feet. About in the center of the ceiling there was a skylight in the form of a cupola 8 feet by 5 feet, with windows on the north, east and west sides which were open on August 8. There was a door and transom between the bakeshop and supply room. In the northeast corner of the bakeshop there was a stairway leading down to the basement. At the bottom of the stairway there was an electric fan which defendant had taken from an automobile. It had four 8-inch blades, was 16 inches across, made about 1,750 revolutions per minute and was powered by a one-eighth horsepower motor. The roof was covered with gravel, tar and tar paper. It was flat and sloping, the space between the roof and ceiling being 4 feet at the north end and 2 feet at the south end of the shop.

The bake oven was in the southwest corner of the shop and was 12 feet wide, 14 feet long and 7 feet high. When the oven was in operation, the interior was kept at a temperature of approximately 500 degrees and the surface of the oven maintained about 120 degrees of heat.

The maximum temperature on August 8, 1934, was 108 degrees which temperature was reached about the middle of the afternoon. The day was sultry. When West left his home about 7 o'clock in the evening to go to work he was apparently in good health. He had lost a neglible amount of time from his work on account of illness during the 12 years of employment by defendant. None of his family suspected that he did not have a good heart. Mrs. West testified that "during all the years we lived as wife and husband to my knowledge Mr. West did not have any medical attention. He never had any medical attention for his heart that I know of and he did not have any spells with his heart that I saw while we were living together as husband and wife." West started to work at 7:30 and about 9 he complained of the heat. He perspired profusely; his face was alternately flushed and pale; he had chills, drank a large amount of water and became very weak. He continued at his work, how-

616

ever, until a relief baker arrived about 1 o'clock a. m. He was then taken to his home in a car. On his arrival home he stated that it was the hottest night he had ever spent at the bakery. A fellow employee stated that he left the shop at 1 o'clock because he had gone just as far as he could and could not stand it any longer.

■ Exhaustion by artificial heat causing the death of a workman in the course of his employment creates a compensatory injury.

■ Though the injury aggravates or accelerates a disease with which the workman is afflicted, it is compensable if death results from or was hastened by the injury. Wax v. Des Moines Asphalt Corp., 220 Iowa 864, 263 N. W. 333; Shepard v. Carnation Milk Co., 220 Iowa 466, 262 N. W. 110; Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N. W. 35; Belcher v. Des Moines Electric Light Company, 208 Iowa 262, 225 N. W. 404; Hanson v. Dickinson, 188 Iowa 728, 176 N. W. 823; Bicanic v. Kroger Grocery and Baking Co., Mo. App., 83 S. W. 2d 917; Schnider's Workmen's Compensation Law, Vol. 1, page 708.

In Belcher v. Des Moines Electric Light Company, supra, the court adopted the following statement from 1 Honnold on Workmen's Compensation, 460 [208 Iowa 262, 266, 225 N. W. 406] :

"Susceptibility to risk does not prevent recovery for an injury or death proximately caused by an injury arising out of the employment. Every workman brings with him to his employment certain infirmities. They may be disabilities of age, or disabilities of infirmity not connected with age. * * * The accident arises out of the employment none the less because the remote cause is an infirmity existing when the employment was undertaken."

■ It is essential in order to recover an award for death from heat exhaustion that natural heat be intensified by artificial heat.

In the case of Wax v. Des Moines Asphalt Corp., supra, the workman died from sunstroke. Justice Albert, speaking for the court, states the rule in the following language [220 Iowa 864, 866, 263 N. W. 334] :

"In order to recover for death from sunstroke, the deceased

must have been subjected to a greater hazard from the heat than that to which the public generally in that locality is subjected. This distinction is recognized in all the authorities, even including most of the authorities cited by the appellant. The industrial commissioner, in numerous of his cases, has recognized this distinction; and, among other of his decisions, in the matter of Behrens v. Town of Sibley, decided in October, 1933, (1934 Workmen's Compensation Service, p. 48), he states:

" 'This rule requires that claims for heat exhaustion or freezing can be given award only in cases where the workman is exposed to conditions of temperature unusual or more intense than those experienced by workmen of the community in general.' "

■ This court adheres to the residuum of legal evidence rule. Renner v. Model L. C. & D. Co., 191 Iowa 1288, 184 N. W. 611.

If there was competent evidence to sustain the decision of the industrial commissioner, the trial court erred in reversing the award.

■ We will first determine whether there was competent evidence that the employment of Mr. West subjected him to greater or more intense heat than any of the workmen in the community in general or the general public.

W. E. Nanes and M. R. Marlott testified as expert witnesses for claimant. Mr. Marlott was a heating and electrical engineer and had been in this business for 45 years. Mr. Nanes was employed by an air conditioning company and his work was to design and install air conditioning plants. Both witnesses qualified as experts. Their testimony was in response to hypothetical questions which incorporated the facts heretofore recited. Mr. Marlott testified that it was his opinion it was from 10 to 12 degrees warmer in the bakeshop than outside on the night of August 8, 1934, and Nanes testified that it was from 5 to 10 degrees hotter in the bakeshop than outdoors. Each witness gave substantially the same reasons for their opinion. We will not record here their technical testimony in detail. Nanes testified that if the temperature was 108 degrees the temperature on the tar roof of the bakery would be 173 degrees, and that at 108 degrees outside the shop it would have been cooler without the skylight because the open windows would drop heat down into

the room because of their closeness to the roof. Their opinions rested mainly on heat infiltration from the tar roof, the inefficiency and inadequacy of the automobile fan and the artificial heat flowing from the oven which retained a surface temperature of 120 degrees.

The learned trial court disregarded the testimony of these witnesses. We find no reason in the record why the testimony of these expert witnesses, who gave the reasons for their conclusions, was not entitled to consideration.

In our opinion their testimony furnished sufficient evidence to sustain a finding that there was excessive heat in the bakeshop caused by artificial heat.

Carl Leopold, who is now and was at the time of the death of Mr. West an employee of defendant, testified that during August, 1934, it was generally 10 degrees cooler in the bakery than outdoors. He stated, "At times I had observed it was a relief to work in this bake shop as it was so much cooler than outside. On warm days it would be a little cooler in the bake shop there when we have our basement fan going whipping that cool air up." According to this witness, the 4-bladed fan provided an effective cooling and air conditioning system. Defendant testified that he "had many times checked the temperature of the bake room with the temperature elsewhere in the vicinity and there was most always a lower temperature in the bake room than out doors." There was a conflict in the evidence on the question of excessive heat and it was the duty of the commissioner to determine which testimony was entitled to the greater weight and credibility.

The case of Bicanic v. Kroger Grocery and Baking Company, Mo. App., 83 S. W. 2d 917, 922, was an action under the Workmen's Compensation Act in the state of Missouri to recover compensation for the death of claimant's husband who was employed in the bakery department near heated ovens where it was claimed that the temperature was excessively hot and that the weather outside was very warm. The court states:

"All the witnesses who testified, and who had any knowledge of the oven room stated that it was hotter in there, where deceased employee was working, than it was outside. They did not undertake to give the number of degrees hotter in the oven room than outside, as that was impossible as no thermometers

were kept in that room except the oven thermometers which showed a temperature of 475 to 500 degrees. The ovens were of brick and iron, and it is a matter of common knowledge that the intense interior heat would communicate itself to the brick and iron, and notwithstanding the open windows, the fans, the ventilators, and other appliances designed to lower the heat and dispel the fumes, it would necessarily follow that the temperature of such a room would be higher and more oppressive than the outside temperature. It was impossible for it to be otherwise. * * *

''We think, on principle, that it is unnecessary for claimants to show the exact temperature in the oven room by thermometer readings. There is no conflict in the testimony as to whether it was hotter in the oven room, where deceased employee was working, than outside. All witnesses interrogated on that subject said it was hotter in varying degrees in than out of the bake room. This uniformity in the testimony only conforms to our common knowledge and experience on the subject.''

That the bakeshop was hotter and more oppressive than the outside atmosphere is a reasonable inference from the direct evidence.

We do not agree with defendant's contention that the heat situation in the shop was not a proper subject of expert testimony. The conditions, causes, and effects to which the experts testified required special study and experience to understand and explain and the admission of expert testimony was proper. See Hammer v. Janowitz, 131 Iowa 20, 108 N. W. 109.

Defendant also asserts that the experts testified to the ultimate fact that there was excessive heat in the bakeshop which fact was for the determination of the commissioner.

The evidence given by the experts consisted of material, evidentiary facts which constituted a basis for one of the ultimate facts in the case which was that decedent received an injury arising out of and in the course of his employment. Furthermore, defendant did not object to the testimony on the ground that it stated an ultimate fact.

Assuming the hypothetical question called for an ultimate fact the testimony was admissible under Code section 1441 which provides that the commissioner shall not be bound by

common law or statutory rules of evidence but shall make such investigation and inquiries as is best suited to ascertain and conserve the substantial rights of the parties.

Defendant's contention that the hypothetical questions propounded to the expert witnesses included statements not supported by the record and omitted material facts is not well taken. As the objections to the questions failed to point out to the commissioner the particular defect complained of defendant is not in a position to present this proposition on appeal. Reynolds & Heitsman v. Henry, 193 Iowa 164, 185 N. W. 67. An examination of the questions reveals no material inaccuracy.

Dr. Rambo testified that some of the symptoms of heat exhaustion are that the patient perspires freely, has an increased thirst, flushed face, increasing weakness and chills. Mr. West manifested substantially all of the symptoms enumerated by the physician. Dr. Rambo conducted the autopsy and found that Mr. West had serious heart trouble. He testified in response to a hypothetical question that the conditions and circumstances under which decedent worked on the night of August 8 ''were probable, material facts in causing his death; I think they were reasonable, probable, contributory facts.'' He further testified on cross-examination:

''The pathological findings were advanced. I do not state that the condition of the heart was such that it would need no aggravating factor in order to come to the result that it did, but I feel like it was a heart that would have failed in the reasonably near future in one way or another.''

The testimony of Dr. Rambo furnished evidence that West suffered heat exhaustion which hastened his death and thus provided the necessary causal connection between his death and injury.

The commissioner was the sole, final judge of the facts and there was competent evidence to sustain his finding that deceased received an injury growing out of and in the course of his employment which contributed to and hastened his death. —Reversed.

HAMILTON, SAGER, BLISS, and HALE, JJ., concur.

OLIVER, C. J., concurs in the result.